**Steven Troy CURRY, Appellant,**

v.

**The STATE of Texas.**

**No. 1521–99.**

Court of Criminal Appeals of Texas.

Sept. 20, 2000.

**396**

Charles Freeman, Houston, for appellant.

Jeffrey L. Van Horn, First Asst. State's Atty., Matthew Paul, State's Atty., Austin, for the State.

## OPINION

KEASLER, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MANSFIELD, KELLER, PRICE, HOLLAND, and WOMACK, J.J., joined.

The State's indictment of Steven Curry charged him with aggravated kidnapping "by using and threatening to use deadly force namely, a firearm." Over Curry's objection, the trial court permitted the State to delete this phrase after trial began. We must decide whether the trial court erred in allowing this deletion, and whether a sufficiency analysis should in-

clude this allegation. We conclude that once the State made this allegation, it had to prove it. We also conclude that the sufficiency of the evidence must be analyzed by using this phrase. And in conducting this analysis, we find the evidence sufficient to support Curry's conviction.

## FACTS

Jetterson Williams testified that he was in the parking lot of the Spices Nightclub at about 8 p.m. when Curry and two other individuals "put" him into a car and drove off. He testified that he did not want to be in the car. While in the car, Curry beat him up with his hands. Curry twisted Williams' knee and arm and punched Williams in the head. Williams did not recall the length of the beating, whether the car made any stops, whether Curry said anything to him, or whether Curry got a gun at any time. Williams admitted previously telling the police that Curry had dragged him to the car, that Curry and the other men had beaten him with a brick, that Curry had tied him up and put a plastic bag over his face, that Curry had gone by a friend's house and obtained a .38 pistol, that Curry had exited the car at one point and Williams had heard three gunshots, and that Curry had forbidden Williams to tell to anyone what had happened.

Williams then testified that he never told the police that Curry had a gun, that Curry had gotten out of the car, or that Curry had threatened him. The State impeached Williams' credibility with the statements that he had previously made to the police. On cross-examination, Williams testified that he had no recollection of anything he said to anyone from the time he was thrown in the car until the time he awoke at the hospital. On redirect examination, Williams admitted that, after the incident, he was placed in a holdover cell with Curry and had been concerned for his safety. Later in the trial, Williams got back on the stand and testi-

fied that Curry was not the person who kidnapped him and beat him up.

Williams was found by emergency medical technicians in a warehouse district. He was tied up with his pants around his ankles and was shaking uncontrollably. He was hospitalized for a dislocated knee and elbow, trauma to the head, and gross instability.

Tracy Jacobs testified that he saw Curry that night getting out of a similar-looking car and holding a gun. Curry shot and killed another individual, then returned to the car and the car drove off. Other testimony revealed that Curry's home had been burglarized the day before. The burglars had broken into his home by breaking down the door. Curry suspected that Williams was responsible for the burglary. Williams was a petty thief who routinely sold stolen jewelry at the Spices Club. He had several theft convictions.

Curry presented an alibi defense. John McCalep testified that he was working on Curry's front door from about 5 p.m. to about 11 p.m. that night. He testified that Curry was either in the apartment or nearby the entire time. Curry testified similarly.

The State refuted that testimony with the testimony of Cynthia Floyd, Curry's girlfriend at the time. She testified that she was at the apartment the entire time while McCalep was working on the door, but Curry left the apartment around 7 or 8 p.m. and never returned. She also testified that Curry told her to say that she was with him that evening.

## PROCEDURAL BACKGROUND

The State indicted Curry for aggravated kidnapping. The indictment alleged that

Curry "abduct[ed] Jetterson Williams ... without his consent, with intent to prevent his liberation by using and threatening to use deadly force namely, a firearm, on [Williams] and with intent to inflict bodily injury on [Williams] and to terrorize [Williams] and to violate and abuse [Williams] sexually."

After the State rested its case, it moved to delete the phrase "by using and threatening to use deadly force namely, a firearm, on [Williams]" from the indictment. The trial court granted that motion over Curry's objection.

On appeal, the court of appeals held that it was error under Art. 28.10(b) for the trial court to grant the State's motion, and the error harmed Curry.[1] On Curry's sufficiency point, the court of appeals held that the evidence was sufficient to convict.[2] Curry filed a petition for discretionary review in which he argued that the court of appeals erred in its sufficiency analysis by failing to apply *Malik v. State*.[3] We agreed and remanded the case to the court of appeals to reconsider Curry's sufficiency point in light of *Malik*.[4]

On remand, the court of appeals again found that the trial court's ruling on the State's motion to amend the indictment was error and the error harmed Curry.[5] In its sufficiency analysis, the court concluded that it was "bound by the theory alleged in the indictment as amended."[6] Since neither the jury charge given nor the amended indictment required proof that Curry used a firearm, the court found the evidence sufficient to support a conviction.[7]

Both the State and Curry filed petitions for discretionary review, from which we

1. *Curry v. State*, 966 S.W.2d 203, 205–06 (Tex. App.—El Paso 1998).

2. *Id.* at 207.

3. 953 S.W.2d 234 (Tex.Crim.App.1997).

4. *Curry v. State*, 975 S.W.2d 629 (Tex.Crim. App.1998).

5. *Curry v. State*, 1 S.W.3d 175, 177–79 (Tex. App.—El Paso 1999).

6. *Id.* at 181.

7. *Ibid.*

granted three grounds. The State, through the State Prosecuting Attorney and the Harris County District Attorney, contends that the phrase at issue in the indictment was surplusage, unnecessary to the indictment, so the State was permitted to "abandon" the language even after trial began. Curry argues that the court of appeals erred in its sufficiency analysis, because under *Malik*, the hypothetically correct jury charge would have included the phrase which the State was improperly allowed to abandon. Since the resolution of Curry's claim depends on our resolution of the State's contention, we address the State's claim first.

## MODIFICATION OF INDICTMENT

Initially, we note that this case does not really involve an "abandonment" of an allegation. The State was permitted to delete its specific allegation regarding the type of abduction it sought to prove. As a result, it was permitted at trial to prove either definition of abduction. Rather than "losing" the allegation it deleted, it essentially retained that allegation and added the alternative definition of abduction, giving it the opportunity to prove either one in order to obtain a conviction. By deleting the words it did, the State actually broadened the scope of the offense alleged so as to include both theories of abduction. This is not like a standard "abandonment," which results in the State limiting its theories at trial. We will refer to the deletion of the phrase in this case as a modification of the indictment, rather than an abandonment.

## Legal Background

Both the U.S. Constitution and the Texas Constitution guarantee an accused the right "to be informed of the nature and cause of the accusation" against him.[8] The charging instrument must convey sufficient notice to allow the accused to prepare a defense.[9] The Legislature has provided some guidance as to the adequacy of notice through Chapter 21 of the Code of Criminal Procedure.[10] In particular, Art. 21.03 provides that "[e]verything should be stated in an indictment which is necessary to be proved."[11]

An indictment is generally sufficient to provide notice if it follows the statutory language.[12] But tracking the language of the statute may be insufficient if the statutory language is not completely descriptive, so that more particularity is required to provide notice.[13] For example, when a statute defines the manner or means of commission in several alternative ways, an indictment will fail for lack of specificity if it neglects to identify which of the statutory means it addresses.[14] On the other hand, the State need not plead evidentiary matters.[15]

Not every list of alternatives in a statute will constitute a "manner or means" of committing the offense. For example, in *Thomas v. State*, we held the State need not allege which statutory definition of "owner" it seeks to prove in a theft case.[16] We reached this conclusion because the term "owner" did not "go to an act or omission of the defendant."[17] Similarly, we held the State need not further define the phrase "without effective consent," as

---

**8.** U.S. CONST., AMEND. VI.; TEX. CONST. Art. I, § 10.

**9.** *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim.App.1998).

**10.** *Ferguson v. State*, 622 S.W.2d 846, 849 (Tex.Crim.App.1981) (op. on reh'g).

**11.** TEX.CODE CRIM. PROC Art. 21.03.

**12.** *Olurebi v. State*, 870 S.W.2d 58, 62 (Tex. Crim.App.1994).

**13.** *Ibid.*

**14.** *Mays*, 967 S.W.2d at 407.

**15.** *Berg v. State*, 747 S.W.2d 800, 809 (Tex. Crim.App.1984) (op. on reh'g).

**16.** *Thomas v. State*, 621 S.W.2d 158, 164 (Tex. Crim.App.1981) (op. on reh'g).

**17.** *Ibid.*

that phrase did not constitute an act or omission on the part of the defendant.[18] In contrast, in *Ferguson v. State*, we held the State did need to allege, in the face of a motion to quash, which method of delivery it sought to prove in a delivery of controlled substance prosecution.[19] This was because delivery was "the act by the [defendant] which constitute[d] the criminal conduct."[20]

More recently, in *Saathoff v. State*,[21] we extended the concept beyond acts and omissions to conduct.[22] There, we held that the State must allege, in the face of a motion to quash, which type of intoxication it seeks to prove in a prosecution for involuntary manslaughter.[23] The State argued that intoxication was not an act or omission, but merely a condition. We held the State interpreted the concept of "act or omission" too narrowly.[24] We concluded that "[i]f the prohibited conduct is statutorily defined to include more than one manner or means of commission," the State must allege, upon timely request, which manner or means it seeks to establish.[25]

██ Sometimes the State alleges evidentiary matters in its indictment which are not "necessary to be proved" under Art. 21.03. These allegations are considered "surplusage." In *Burrell v. State*,[26] we explained that "allegations not essential to constitute the offense, and which might be entirely omitted without affecting

the charge against the defendant, and without detriment to the indictment are treated as mere surplusage, and may be entirely disregarded."[27] The exception to that rule is when "the unnecessary matter is descriptive of that which is legally essential to charge a crime."[28] In *Upchurch v. State*, we explained that extra language is "descriptive" of an element of the offense if it "define[s] the offense more narrowly, place[s] it in a specific setting, or describe[s] the method by which it was committed."[29] Such language "must be proven as alleged, even though needlessly stated."[30]

It is important to distinguish two concepts. Whether an indictment fails to charge an offense at all is an entirely different issue from whether the indictment fails to provide adequate notice and is therefore subject to a motion to quash.[31] We are concerned today only with what the indictment must allege to provide notice to the defendant.

### Application

To determine whether the phrase in this case was surplusage, we review our cases on surplusage. The vast majority of our surplusage cases involve language that is not derived from any statute. In those cases, the language at issue is either unnecessary language that need not be proved[32] or descriptive language that must

18. *Id.* at 161.

19. *Ferguson*, 622 S.W.2d at 850–51.

20. *Id.* at 850.

21. 891 S.W.2d 264 (Tex.Crim.App.1994).

22. Tex. Penal Code § 1.07(a)(10) (conduct means an act or omission and its accompanying mental state).

23. 891 S.W.2d at 267.

24. *Id.* at 266.

25. *Ibid.*

26. 526 S.W.2d 799 (Tex.Crim.App.1975).

27. *Id.* at 802.

28. *Ibid.*

29. *Upchurch v. State*, 703 S.W.2d 638, 641 (Tex.Crim.App.1985).

30. *Id.* at 640, *citing Burrell*, 526 S.W.2d at 802.

31. *Olurebi*, 870 S.W.2d at 62 n. 5.

32. *Eastep v. State*, 941 S.W.2d 130, 135 (Tex. Crim.App.1997) (abandonment of some appropriations in theft indictment permissible where aggregate value of remaining appropriations was still over $20,000); *Swope v. State*, 805 S.W.2d 442 (Tex.Crim.App.1991) (State need not allege, to provide notice, acts defen-

be proved even though needlessly alleged.[33]

But in the case at hand, the language at issue comes directly from a statute, specifically, Penal Code § 20.01(2)(B). We only have a handful of surplusage cases concerning statutory language. Some of those cases hold that statutory language

dant charged as party committed which constituted manner or means in which he solicited, encouraged, directed, or aided primary actor); *Mays v. State*, 726 S.W.2d 937, 941–42 (Tex.Crim.App.1986) (allegation of conduct of another person was surplusage and need not be proved because did not describe any conduct of defendant's); *Upchurch, supra* (allegation that vehicle was "exempt" was not descriptive of any element of offense of failure to maintain financial responsibility so was surplusage and need not be proved); *Carberry v. State*, 701 S.W.2d 255 (Tex.Crim.App.1985) (excessive markings by bank on tenor of check alleged in forgery indictment were surplusage and need not be proved); *Ex parte Williams*, 622 S.W.2d 876, 877 (Tex.Crim. App.1981) (allegations in credit card abuse indictment that card was "owned by complainant" and stolen "from complainant" were surplusage and need not be proved, even though alleged); *Hardie v. State*, 588 S.W.2d 936, 938–39 (Tex.Crim.App.1979) (allegation of culpable mental state was surplusage and need not be proved where not an element of offense); *Smallwood v. State*, 607 S.W.2d 911, 912 (Tex.Crim.App.1979) (allegation in robbery indictment that property stolen was "three pair women's slacks" was surplusage because property taken not essential element of offense so need not be proved, even though alleged); *Green v. State*, 578 S.W.2d 411 (Tex. Crim.App.1979) (allegation in criminal mischief indictment that property was "seven miles north of Palo Pinto County" was unnecessary and not descriptive of what was legally essential, so was surplusage, and need not be proved, even though alleged); *Ferguson v. State*, 572 S.W.2d 521, 524 (Tex.Crim.App. 1978) (word "copy" on tenor of security in indictment was surplusage and need not be proved because not descriptive of offense); *Davis v. State*, 532 S.W.2d 626 (Tex.Crim.App. 1976) (allegation of money stolen in robbery was surplusage and need not be proved where indictment also alleged automobile was stolen and robbery prosecution did not require proof that all the property alleged was in fact stolen); *Collins v. State*, 500 S.W.2d 168, 169 (Tex.Crim.App.1973) (allegation of value "over $5.00" surplusage, as statute only required value be below $50.00); *Malazzo v. State*, 308 S.W.2d 29, 31, 165 Tex.Crim. 441 (1957) (allegation of value "in excess of $25" surplusage and need not be proved).

**33.** *Langston v. State*, 855 S.W.2d 718, 721–22 (Tex.Crim.App.1993) (allegation in trespass

case that property was "owned by Karen Johnson" was unnecessary but once alleged, had to be proved, presumably because it was descriptive of property); *Polk v. State*, 749 S.W.2d 813, 816 (Tex.Crim.App.1988) (allegation that individual was "unknown" to grand jurors was descriptive of element of "another," so once alleged, had to be proved); *Huffman v. State*, 726 S.W.2d 155, 156–57 (Tex. Crim.App.1987) (allegation of "Black Hat Bar" was unnecessary but descriptive of "licensed premises" so once alleged, had to be proved); *Wray v. State*, 711 S.W.2d 631, 634 (Tex.Crim.App.1986) (allegation "by pointing said deadly weapon at Mary Ann Henderson" was descriptive of element of threatening another with imminent bodily injury, so once alleged, had to be proved); *Clark v. State*, 665 S.W.2d 476, 484 (Tex.Crim.App.1984) (allegation that defendant used instrument "known as a psychological stress evaluator" was descriptive of "instrument" element of offense, so once alleged, had to be proved); *Franklin v. State*, 659 S.W.2d 831 (Tex.Crim.App.1983) (unnecessary allegation that defendant knew property was stolen from Elmer L. Herzberg was descriptive of stolen property element of offense, so once alleged, had to be proved); *Windham v. State*, 638 S.W.2d 486, 487 (Tex. Crim.App.1982) (phrase "by shooting at her with a gun" was allegation of act amounting to more than mere preparation so had to be proven); *Garcia v. State*, 595 S.W.2d 533 (Tex.Crim.App.1980) (allegation that defendant did "take, steal, appropriate and carry away" was unnecessary but once alleged, had to be proved); *Weaver v. State*, 551 S.W.2d 419 (Tex.Crim.App.1977) (allegation that gun was a "Ruger" was descriptive of deadly weapon element of offense, so once alleged, had to be proved); *Rowland v. State*, 523 S.W.2d 676 (Tex.Crim.App.1975) (allegation "on F.M. 1632" was descriptive of "upon a public highway" element of offense, so once alleged, had to be proved); *Cohen v. State*, 479 S.W.2d 950, 951 (Tex.Crim.App.1972) (allegation "in the 12,300 block of Westheimer Road" was unnecessary, but descriptive of "in the city of Houston, Texas," an element of offense, so once alleged, had to be proved); *McClure v. State*, 296 S.W.2d 263, 163 Tex. Crim. 650 (1956) (allegation "at the Alamo Cafe located at Cleveland and Second Streets" was descriptive of location element of offense so once alleged, had to be proved).

must be proved if alleged.[34] Others hold that excessive statutory language is surplusage and need not be proved.[35] The State relies on this latter line of authority for its contention that the statutory language alleged here was surplusage and need not have been proved.

We have already held contrary to the State's position with regard to this precise statute. In *Gibbons*, we held in an aggravated kidnapping case that the State must allege, in the face of a motion to quash, which type of abduction it seeks to prove.[36] The State argues that our holding in *Gibbons* was incorrect, conflicts with *Berg, Ward*, and *Ex parte Porter*,[37] and should be overruled. We disagree.

In *Porter*, we held that the State need not allege which definition of "forgery" it seeks to prove. The State contends that "abduct" is no different than "forge." But *Porter* concerns the allegations the State must make in order for an indictment to allege an offense. It does not concern which allegations the State needs to make in order to provide notice. We did state that the particular definition of forgery

was merely an evidentiary matter.[38] But we also indicated that in the face of a motion to quash for lack of notice, the State would be required to make this allegation.[39] This reasoning seems to conflict with *Thomas*'s holding that evidentiary matters need not be alleged even in the face of a motion to quash.[40] But since the holding in *Porter* was that the indictment was not fundamentally defective, the statements regarding notice are merely dicta. *Porter*'s holding is irrelevant to the issue before us, and its dicta, though it refutes the State, is questionable. *Porter* does not conflict with *Gibbons*.

The State also argues that *Berg*[41] conflicts with *Gibbons*. In *Berg* we stated that the term "appropriate" need not be further defined.[42] The State contends that "appropriate" and "abduct" are the same. We disagree. Appropriation itself is not defined in the Penal Code. Rather, the Code describes in which circumstances an appropriation is unlawful.[43] We explained in *Berg* that the "manner of acquisition or circumstances surrounding the acquisition

**34.** *Thomas v. State*, 753 S.W.2d 688, 692 (Tex. Crim.App.1988) (allegation that owner did not give his "assent in fact" was unnecessary but descriptive of element of lack of effective consent, so once alleged, had to be proved); *Reynolds v. State*, 723 S.W.2d 685, 686–87 (Tex.Crim.App.1986) (statutory alternatives for type of restraint, whether by moving victim from one place to another or confining victim, must be alleged in face of motion to quash); *Gibbons v. State*, 652 S.W.2d 413, 415 (Tex.Crim.App.1983) (State must allege which type of abduction it seeks to prove in face of motion to quash), *overruled in part*, *Adams v. State*, 707 S.W.2d 900, 902–03 (Tex. Crim.App.1986) (error does not result in automatic reversal); *Ferguson*, 622 S.W.2d at 850–51 (State must allege which type of delivery it seeks to prove in face of motion to quash).

**35.** *Berg*, 747 S.W.2d at 809 (allegation that appropriation was "without owner's effective consent" was not element of offense of theft so was surplusage and need not be proved, even though alleged); *Ward v. State*, 642 S.W.2d 782, 783 (Tex.Crim.App.1982) (false imprisonment indictment need not allege that restraint was "without consent"; that phrase

is within definition of "restrain" and would be surplusage); *Jackson v. State*, 633 S.W.2d 897, 899 (Tex.Crim.App.1982) (allegation that habitation "was not then open to the public" was unnecessary in burglary indictment so need not be proved, even though alleged).

**36.** *Gibbons*, 652 S.W.2d at 415.

**37.** 827 S.W.2d 324, 327 (Tex.Crim.App.1992) (op. on reh'g)

**38.** *Ibid.*

**39.** *Ibid.*

**40.** *Thomas*, 621 S.W.2d at 161.

**41.** *Berg*, 747 S.W.2d at 809.

**42.** *Ibid.; but see Coats v. State*, 712 S.W.2d 520 (Tex.Crim.App.1986) (term appropriate must be defined); *Coleman v. State*, 643 S.W.2d 124 (Tex.Crim.App.1982), (same); *Gorman v. State*, 634 S.W.2d 681 (Tex.Crim. App.1982) (same).

**43.** Tex. Penal Code § 31.03(b).

are merely evidentiary matters." [44] We relied on *McClain v. State.*[45] In *McClain,* we explained that the manner of acquisition is irrelevant under the Penal Code.[46] While earlier versions of the Code had set out distinct theft offenses based on the manner of acquisition, the current Code removes that focus entirely.[47]

The term "abduct" is different from "appropriate." First, unlike "appropriate," "abduct" is defined in the Penal Code. The Penal Code does not merely describe circumstances in which an abduction is unlawful; it defines an abduction as a restraint accompanied by an intent to prevent liberation.[48] So the treatment of the terms "appropriate" and "abduct" in the Penal Code is different. Second, there is no legislative history pertaining to the kidnapping statute similar to that of the theft statute. There has been no effort on the Legislature's part to codify many different types of kidnapping into a single statute. We conclude the rationale behind *Berg* and *McClain* is not applicable to the kidnapping statute.

In *Ward,* the issue was whether informations charging false imprisonment were fundamentally defective for failing to allege that the restraint was "without consent." [49] In holding the informations were not defective, we stated that the phrase "without consent" was surplusage.[50] This case is also distinguishable. First, "abduct" is conduct, but "without consent" is neither an act, omission, nor conduct.[51] So under *Thomas, Ferguson,* and *Saathoff,* "abduct" must be defined while "without consent" need not be.

More importantly, there are no statutory alternative manner or means for the "without consent" element of restraint. Restraint is defined as restricting a person's movement without consent while preventing his liberation in either of two ways.[52] Restraint is not restraint unless it is without consent. Since there are no alternatives to "without consent," there would be no need for the State to make this allegation in an indictment to provide notice. It is a given under the statute that all restraint is without consent. In contrast, the only thing "given" about an abduction is that it includes restraint. The intent element is not a given, since there are two statutory alternatives. So *Ward* is distinguishable.

Although the State does not rely on *Jackson* or *Marrs v. State,*[53] we note that they, too, are distinguishable. In *Jackson,* the State alleged in a burglary-of-a-habitation indictment that the habitation was "not then open to the public." [54] This language appears in the portion of the statute criminalizing burglary of a building, not a habitation.[55] We held the State did not need to make the allegation and it was surplusage.[56] This case is distinguishable because the statutory language at issue was not even an element of the offense which the State was seeking to prove.

Finally, there is no conflict between *Marrs* and *Gibbons.* We held in *Marrs* that "enter" need not be further defined in a burglary indictment. "Enter" is defined in the Penal Code as intruding any part of the body or intruding any physical object

**44.** *Berg,* 747 S.W.2d at 809.

**45.** 687 S.W.2d 350 (Tex.Crim.App.1985).

**46.** *Id.* at 353–55.

**47.** *Id.* at 353.

**48.** Tex. Penal Code § 20.01(2).

**49.** 642 S.W.2d at 783.

**50.** *Ibid.*

**51.** *See Thomas,* 621 S.W.2d at 161 (allegation of "without effective consent" in theft indictment not act or omission of defendant).

**52.** Tex. Penal Code § 20.01(1).

**53.** 647 S.W.2d 286 (Tex.Crim.App.1983).

**54.** 633 S.W.2d at 898–99.

**55.** Tex. Penal Code § 30.02(a)(1).

**56.** 633 S.W.2d at 899.

connected with the body.[57] We explained in *Marrs* that the "act" involved in entering is the intrusion.[58] The statutory alternatives listed do not differentiate between methods of intrusion, because both are essentially the same.[59] Both require the defendant to use his body, either directly or indirectly.[60] Professors Dix and Dawson have described the statutory alternatives here as the "peripheral aspects" of the act of entering.[61]

■ Abduction is different. It adds to "restraint" the intent to prevent liberation in one of two ways: either by secreting or by the use or threat of deadly force.[62] An essential element of abduction is that the defendant intended to prevent the liberation of the complainant.[63] Without this accompanying mental state, there is no abduction; there is only restraint. The accompanying mental state is what transforms mere restraint into abduction. So there is nothing "peripheral" about this intent element. The two alternative mental states provided in the statute are the "manner or means" of engaging in the conduct of abduction. The rationale in *Marrs* involved the specific definition of "enter" in the burglary statute. It did not set forth any general principle of statutory construction. The Penal Code's definition of "enter" is simply not analogous to its definition of "abduct."

■ We have never before held that a statutory alternative "manner or means" of engaging in an act, omission, or conduct constitutes surplusage. Indeed, we held

the opposite in *Gibbons, Reynolds,*[64] and *Ferguson.*[65] We decline the State's invitation to create this new rule today. Instead, we reaffirm our decision in *Gibbons* and hold that the State must allege, in the face of a motion to quash, which type of abduction it seeks to prove in order to give the defendant notice. The phrase "by using and threatening to use deadly force namely, a firearm" was not surplusage, and the trial court erred in allowing the State to delete this phrase over Curry's objection after trial had begun.

Within its argument on this issue, the State urges us to overrule the exception to the surplusage rule which provides that if a phrase is descriptive of an essential element of the offense, it must be proved and cannot be surplusage. But the phrase in this case was not merely descriptive of an element of the offense; it was a manner or means of committing an element of the offense. Since the phrase here does not fall within the exception to the surplusage rule, we need not (and should not) decide whether to abandon the exception to the surplusage rule.

## SUFFICIENCY OF THE EVIDENCE

We next address Curry's contention that the court of appeals erred in its sufficiency analysis. In its original opinion, the court of appeals stated without elaborating that it agreed with Curry "that the record contains no ... evidence" that Curry abducted Williams "by using and threatening to use deadly force namely, a firearm."[66]

**57.** Tex. Penal Code § 30.02(b).

**58.** 647 S.W.2d at 290.

**59.** *Ibid.*

**60.** *Ibid.*

**61.** 41 George E. Dix & Robert O. Dawson, Criminal Practice and Procedure § 20.119 (1995).

**62.** Tex. Penal Code § 20.01(2).

**63.** *Carpenter v. State,* 551 S.W.2d 724, 726 (Tex.Crim.App.1977).

**64.** 723 S.W.2d at 686–87 (State must allege, in face of motion to quash, which statutory alternative manner or means of restraint it seeks to prove, whether by moving victim from one place to another or confining victim).

**65.** 622 S.W.2d at 849 (State must allege which type of delivery it seeks to prove in prosecution for delivery of controlled substance).

**66.** 966 S.W.2d at 207.

The court did not explain why it agreed with Curry or give any rationale for its conclusion. It made this statement without reciting the facts of the case or examining any relevant caselaw. Nevertheless, the court held the evidence sufficient because it measured the evidence against the jury charge given, and that charge did not require the jury to find that Curry abducted Williams by using a firearm.[67] We remanded for the court to apply *Malik.*[68]

On remand, the court of appeals stated as follows:

> As we have found in our discussion of Curry's first point of error, Curry's remedy for error in amending the indictment after trial began is a new trial. The error is adequately addressed with this remedy and we need not fashion an additional remedy of acquittal based on failure of the evidence as measured under the original indictment.[69]

We disagree. If the evidence is insufficient to support Curry's conviction, the remedy is acquittal. That remedy is greater than simply granting Curry a new trial. Curry's sufficiency point of error must be addressed, regardless of the fact that he has prevailed on his point of error concerning an erroneous amendment of the indictment.

The court of appeals then briefly addressed Curry's sufficiency point. It held that it was "bound by the theory alleged in the indictment as amended."[70] Since the court's charge, as measured against that indictment, did not require the jury to find that Curry used a firearm, the court found it "irrelevant whether the evidence supported such a finding."[71]

### Hypothetically Correct Jury Charge

In considering the court of appeals' analysis, we look to *Malik.* Under *Malik,* sufficiency of the evidence is to be measured against the hypothetically correct jury charge. A hypothetically correct jury charge is one which "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[72] This list is not necessarily exhaustive.[73]

Determining the "law" as "authorized by the indictment" first requires that we determine which indictment: the State's original indictment or the amended indictment. Since we have concluded the indictment was erroneously amended, the hypothetically correct jury charge must be one which is authorized by the original indictment, not the amended indictment.

We believe the "law" as "authorized by the indictment" must be the statutory elements of the offense of aggravated kidnapping as modified by the charging instrument. That is to say, Curry's hypothetically correct jury charge could not simply quote the language of the statute, instructing the jury to find Curry guilty if it found that he abducted "another person," because the indictment specifically charges that Curry abducted Williams, and the State was required to prove that element of the offense.

Similarly, the hypothetically correct jury charge could not simply track the statute, alleging the Curry abducted Williams "with the intent to [either] (1) hold him for ransom or reward; (2) use him as a shield or hostage; (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony; (4) inflict bodily injury on him or violate or abuse him sexually; (5) terrorize him or a third per-

---

67. *Ibid.*

68. 975 S.W.2d at 630.

69. 1 S.W.3d at 180.

70. *Id.* at 181.

71. *Ibid.*

72. *Malik,* 953 S.W.2d at 240.

73. *Id.* at 240 n. 5.

son; or (6) interfere with the performance of any governmental or political function." [74] The indictment specifically limited the State's allegations to options (4) and (5). So in terms of "setting out the law" as "authorized by the indictment," Curry's hypothetically correct jury charge would have to instruct the jury that, to find Curry guilty, they must find that he intentionally or knowingly abducted Williams with the intent to inflict bodily injury on him, violate or abuse him sexually, or terrorize him.

In that same vein, the "law" defines two different methods of "abduction," but the indictment alleges only one of those methods. So the hypothetically correct jury charge would have to include the phrase "by using and threatening to use deadly force namely, a firearm." Curry's indictment would not "authorize" a conviction on less than proof of this element, because this phrase is not surplusage; once alleged, it had to be proved.

We next consider whether including that phrase operates to "unnecessarily increase the State's burden of proof." The indictment charged that Curry abducted Williams with intent to prevent his liberation by using and threatening to use deadly force. Including the phrase "by using and threatening to use deadly force namely, a firearm" in the hypothetically correct jury charge does not increase the State's burden of proof. Rather, it keeps the State's burden of proof exactly the same. The State is simply required to prove what it alleged. In contrast, to delete that phrase from the charge would result in a decrease in the State's burden of proof.

Finally, we consider whether inclusion in the jury charge of the phrase "using and threatening to use deadly force namely, a firearm" would "adequately describe the particular offense for which [Curry] was tried." The offense for which Curry was

tried was aggravated kidnapping. An "adequate" description of that offense, again, must mean an incorporation of the elements of the charging instrument. Without incorporating those elements, the offense is not "adequately described." Here, the indictment specifically alleged that Curry acted "by using and threatening to use deadly force namely, a firearm." So in this case, an "adequate description of the offense" for which Curry was tried would include this manner and means of abduction.

Our conclusion comports with the rationale we expressed in *Malik*. There, the trial court charged the jury concerning the legality of the defendant's detention.[75] We noted that this charge merely related to the admissibility of evidence, not to any "element of the offense."[76] We explained that a judgment of acquittal should be reserved for those instances in which there is an "actual failure in the State's proof of the crime."[77]

■ Here, the language at issue is a manner or means of an element of the offense. If the State failed to prove that manner or means, then there was an "actual failure in the State's proof of the crime." So under *Malik*, it follows that this phrase must factor into a sufficiency analysis. We conclude that Curry's hypothetically correct jury charge would have instructed the jury to convict Curry if it found that he intentionally or knowingly abducted Williams with the intent to prevent his liberation by using or threatening to use deadly force namely, a firearm, on Williams and with intent to inflict bodily injury on Williams or to terrorize Williams or to violate and abuse Williams sexually.

**Application**

■ We next consider whether the evidence was sufficient to convict Curry under this hypothetically correct charge.

**74.** Tex. Penal Code § 20.04(a).

**75.** *Id.* at 235, 240.

**76.** *Id.* at 240.

**77.** *Ibid.*

In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[78] We resolve inconsistencies in the testimony in favor of the verdict.[79]

█ Williams testified that around 8 p.m. Curry put him in a car against his will. He testified that Curry beat him up and broke his knee and arm. Though he later testified that it was not Curry who took him and beat him up, the jury was free to find his initial testimony more credible. The State impeached Williams' credibility with statements he had previously made to the police. The jury could have found that Williams was not an entirely credible witness, but that some portions of his testimony were true while others were not.

Jacobs testified that he saw Curry that same night, getting out of a similar-looking car, and holding a gun. He saw Curry shoot and kill someone, then return to the car. Floyd testified that Curry left their apartment around 7 or 8 p.m. and did not return the entire evening. She also testified that Curry asked her to say that he was with her that evening. The evidence also revealed that Curry suspected that Williams was involved in the burglary of his home. Although Curry and McCalep testified that Curry was at the apartment the entire evening, the jury was free to believe Floyd and disbelieve Curry and McCalep.

Based on this testimony, the jury could reasonably have believed that Curry restricted Williams's movement without his consent and that Curry intended to inflict bodily injury on Williams or terrorize him. The jury could have believed that Curry had a motive, in that the jury could have believed that Curry wanted revenge against Williams for the break-in. The jury also could have believed that Curry asked Floyd to lie for him because he had violated the law that evening.

█ The only remaining question is whether the jury rationally could have found that Curry restrained Williams with intent to prevent his liberation "by using or threatening to use deadly force namely, a firearm." We believe the jury could have reached this conclusion. An abduction is a continuous, ongoing event.[80] There is no time limit for an abduction.[81] So the abduction did not cease once Williams was put in the car. It continued throughout the entire time he was in the car until he was released in the warehouse district. Since Jacobs testified that he saw Curry with a gun that night, the jury could have believed that Curry had that gun and used it during the course of the abduction to prevent Williams' liberation. In addition, since Williams' credibility was impeached by the State, the jury was free to disbelieve Williams' testimony that Curry did not have a gun and that Curry did not threaten him. The jury reasonably could have believed that Williams denied these things at trial because he was afraid of retribution from Curry.

We deem the evidence sufficient for a rational jury to find that the State proved all the elements of the offense beyond a reasonable doubt.

**CONCLUSION**

We conclude that the phrase "by using and threatening to use deadly force namely, a firearm" was not surplusage. The trial court erroneously permitted the State to delete this allegation over Curry's objection after trial had begun. The court of appeals has determined that this error

---

78. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

79. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

80. *Weaver v. State*, 657 S.W.2d 148, 150 (Tex. Crim.App.1983).

81. *Ibid.*

harmed Curry, and we did not grant review of that issue. We therefore affirm the court of appeals' holding which grants Curry a new trial.

We also find that Curry's hypothetically correct jury charge would have included the "deadly force" phrase, and that the evidence was sufficient to convict Curry under such a charge. We affirm, albeit for different reasons, the court of appeals' holding that the evidence was sufficient to convict.

JOHNSON, J., delivered a dissenting opinion in which MEYERS, J., joined.

JOHNSON, J., dissenting in which MEYERS, J., joined.

I agree with the majority that once the state alleged aggravated kidnapping "by using and threatening to use deadly force namely, a firearm," it was required to prove that allegation. I also agree that the sufficiency of the evidence must be analyzed using this allegation. However, I respectfully dissent from the final disposition

In the instant case, the court of appeals concluded that the hypothetically-correct jury charge did not include the phrase "by using and threatening to use deadly force namely, a firearm, on the Complainant." *Curry v. State*, 1 S.W.3d 175, 180–81 (Tex. App.—El Paso 1999). The majority finds that this was error, and that the hypothetically-correct jury charge would include this phrase. *Ante*, at 404 – 405. Thus, the court of appeals is found to have applied the wrong standard in its sufficiency analysis. The majority then performs its own sufficiency analysis using the proper hypothetically-correct jury charge. *Ante*, at 406 – 407.

Such action is inconsistent with our precedents *See, e.g., Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997) (judgment of court of appeals vacated and cause remanded for that court to apply correct standard of review in analyzing sufficiency of the evidence); *Curry v. State*, 975 S.W.2d 629 (Tex.Crim.App.1998) (judgment of court of appeals vacated and cause remanded for reconsideration of defendant's sufficiency claim in light of *Malik* ); *Blanco v. State*, 962 S.W.2d 46 (Tex. Crim.App.1998) (judgment of court of appeals vacated and cause remanded for reconsideration in light of *Malik* ). As we have previously stated, our jurisdiction is limited to review of decisions by the courts of appeals. *Garcia v. State*, 15 S.W.3d 533, 536–37 n. 5 (Tex.Crim.App.2000); *see also* Tex.Code Crim. Proc. 4.04, § 2; Tex. R.App. P. 66.1. Because the court of appeals did not apply the appropriate sufficiency analysis, the majority's application of the appropriate standard is not a review of the court of appeals' decision; it is an application of that standard in the first instance. We should remand this cause and allow the court of appeals to conduct the appropriate sufficiency analysis. To do otherwise is beyond our authority.