COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-065-CR

 

 

DONALD WAYNE READ                                                        APPELLANT

 

                                                   V.

 

THE STATE
OF TEXAS                                                                STATE

 

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 4 OF TARRANT COUNTY 

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction








A jury convicted Appellant Donald Wayne Read of
felony driving while intoxicated (DWI). 
The trial court sentenced Read to fifteen years=
confinement.  In four points, Read argues
that the evidence is insufficient to support the guilty verdict, that the trial
court abused its discretion by denying his motion to quash the indictment, that
the trial court abused its discretion by denying his motion to suppress the
test results of the Intoxilyzer 5000, and that the trial court erred by
allowing State=s Exhibit 6 into evidence.  We affirm.

II. 
Background Facts

Just after 2:00 a.m. on August 7, 2004, Alicia
King, a civilian, called the Azle Police Department to complain about a van
driving in an unsafe and erratic manner. 
Shortly thereafter, Azle police officers Patrick Bovea and Bill Jones
received a dispatch regarding a possible intoxicated driver in a brown van.
Roughly one minute later, Officer Bovea spotted the brown van and, after
activating his in-car camera, began to follow it.

Officer Bovea testified that while following the
van he witnessed the van=s right tires cross the broken
white line and then return to the passing lane on four separate occasions.  Following the fourth incident, Officer Bovea
proceeded to stop the van.  Officer Bovea
approached the van and directed Read, the driver, to exit the vehicle.  Officer Bovea testified that he smelled a
strong odor of alcohol on Read=s
breath, that Read=s voice was Aslurred
and soft,@ and that Read Adidn=t have a
real good balance.@








Officer Bovea commenced field sobriety tests,
specifically the horizontal gaze nystagmus, the walk-and-turn, the one-leg
stand, the nose touch, and alphabet and counting tests.  The results of the horizontal gaze nystagmus
test indicated that Read=s eyes did not pursue smoothly
and that nystagmus was present in both eyes. 
Officer Bovea testified that during the walk-and-turn test Read failed
to touch heel to toe several times and used his arms for balance. Officer Bovea
testified that during the one-leg stand Read swayed while he balanced, put his
foot down for balance, and used his arms to regain his balance.  During the nose touch, Read swayed while
doing the evaluation and missed touching his nose with his right finger on one
occasion.  Additionally, Read was unable
to properly state the sequence during both the alphabet and counting tests.

While Read was undergoing the field sobriety
tests, Officer Robert Spohn arrived at the scene as a back-up.  Officer Spohn testified that he also smelled
the strong odor of alcohol on Read=s
breath.  Officer Spohn testified that
with the exception of the horizontal gaze nystagmus test, he was able to
witness Read=s performance on the field
sobriety tests.  Officer Spohn testified
that at some point during the tests Read informed him that he had Aa metal
or steel rod in his leg.@ 
Following the tests, it was the opinion of the three officers on the
scene that Read was intoxicated from alcohol.








Officer Bovea placed Read under arrest for
investigation for driving while intoxicated. 
An inventory of the contents of Read=s van
was completed, and Read was transported to the station for further
investigation.  At the station, Read
agreed to submit to a breath test.  At
4:07 a.m. the first breath sample was taken which registered .136.  A second breath sample was taken at 4:10 a.m.
and registered .129.

Read was indicted for felony DWI.  Prior to trial, both parties stipulated that
Read had two prior final convictions for DWI. 
A trial on the merits commenced on January 24, 2006, and resulted in a
hung jury.  A second trial on the merits
commenced on February 7, 2006, and resulted in a guilty verdict. Read was
sentenced to fifteen years=
confinement. 

III.  Legal
Sufficiency

In his first point, Read challenges the legal
sufficiency of the evidence to support his guilty verdict.      

A.  Standard of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict in order to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d
691, 693 (Tex. Crim. App. 2005).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the
evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). 

B. Legally Sufficient
Evidence of Felony DWI             

 

Section 49.04 of the Texas Penal Code defines the
offense of DWI.  See Tex. Penal Code Ann. ' 49.04
(Vernon 2003).  Under this provision, a
person commits an offense if the person is intoxicated while operating a motor
vehicle in a public place.  See id.
AIntoxicated@ means
(A) not having the normal use of mental or physical faculties by reason of the
introduction of alcohol or (B) having an alcohol concentration of .08 or
more.  Id. '
49.01(2).  Section 49.09 may elevate the
offense to a felony if the person has previously been convicted at least twice
for DWI.  Id. '
49.09(b)(2).








Thus, to obtain a conviction for felony DWI, the
State needed to prove that (1) Read was intoxicated, (2) while operating a
motor vehicle, (3) in a public place, and (4) Read had twice previously been
convicted of DWI.  The only point of
contention in this case was Read=s
intoxication.  Read did not contest the
fact that he was operating a van in a public place, and he stipulated prior to
trial that he had previously been convicted of DWI on September 21, 1988, and
again on June 27, 1995. 

Here, the State introduced evidence from three
officers that Read showed signs of impairment. 
Officer Bovea testified that he witnessed Read=s van
cross the broken white line and return to the passing lane on four separate
occasions. Both Officers Bovea and Spohn testified that they smelled the odor
of alcohol on Read.  All three officers
present at the scene testified that after witnessing Read=s field
sobriety test performance, it was their opinion that Read was intoxicated from
alcohol.  The testimony of an officer
that a person is intoxicated may provide sufficient evidence to establish the
element of intoxication.  See Annis v.
State, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979).








Additionally, the jury viewed video of both Read=s field
sobriety tests and intoxilyzer room interview. 
Furthermore, the State presented evidence that Read=s blood
alcohol registered above the legal limit of .08.  Breath test results might not be conclusive
proof that a defendant was intoxicated at the time he was driving; however,
evidence of breath test results, coupled with the arresting officer=s
testimony of his observations and the videotape of the stop, are probative
evidence of the defendant=s intoxication.  See Stewart v. State, 129 S.W.3d 93,
96 (Tex. Crim. App. 2004).

At trial, Read argued that the field sobriety
test results were caused by a lack of sleep and that the video of Read=s
performance of the field sobriety tests differed from the officer=s
testimony.  Read also challenged the
validity of the Intoxilyzer results.  The
jury was in the best position to judge the credibility of the witnesses, and
reconciliation of any conflict between the testimony and other evidence, such
as the videotape, was a duty for the jury. 
See Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App.
2006); Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).

Viewed in the light most favorable to the
verdict, the testimony was sufficient for a rational trier of fact to have
found beyond a reasonable doubt the essential elements of felony driving while
intoxicated.  We conclude that the
evidence was legally sufficient to prove the essential elements of the offense
of felony DWI.  We overrule Read=s first
point.

 

 








IV. Felony Repetition

In his second point, Read challenges the trial
court=s denial
of his motion to quash the indictment. 
Specifically, Read argues that his prior DWI convictions were too remote
to be utilized for felony enhancement.[2]

Chapter 49 of the Penal Code became effective on
September 1, 1994.[3]
Prior to that date, DWI convictions were charged under article 67011-1.[4]
A conviction which occurred under article 67011-1 after January 1, 1984, but
prior to September 1, 1994, may properly be used to enhance a sentence.  See Ex parte Serrato, 3 S.W.3d 41, 42
(Tex. Crim. App. 1999); State v. Verhoeven, 151 S.W.3d 637, 642 (Tex.
App.CFort
Worth 2004, pet. ref=d).  








Former section 49.09(e) of the Texas Penal Code,
in effect at the time of the charged offense, imposed a remoteness restriction
on the use of the prior convictions.[5]  In order to exclude a prior conviction from
use for jurisdictional enhancement, three conditions must be met: (1) the prior
conviction must be final; (2) the current offense must have been committed more
than ten years after the latest date determined under section 49.09(e)(2); and
(3) the defendant must not have been convicted of any other intoxication
related offense within ten years of the latest date under section
49.09(e)(2).  See Getts v. State,
155 S.W.3d 153, 156B57 (Tex. Crim. App. 2005).  The latest date under section 49.09(e)(2) for
measuring the expiration of more than ten years is either the date of judgment
of the prior conviction, the date of discharge from community supervision, the
date of completion of parole, or the date the defendant completed serving a
term of confinement or imprisonment for the prior conviction.  Id. at 156. 








Here, Read stipulated before trial that he had a
1988 DWI conviction and a 1995 DWI conviction. 
Read first argues that arrest dates, as opposed to conviction dates,
should have been used to calculate the elapsed time between offenses.  When interpreting a statute, we attempt to
effect the intent of the legislature.  Griffith
v. State, 116 S.W.3d 782, 785 (Tex. Crim. App. 2003).  AThe
starting point in analyzing the meaning of a statute is the language of the
statute itself.@  Ex parte Evans, 964 S.W.2d 643, 646 (Tex.
Crim. App. 1998).  The latest date under
section 49.09(e)(2) for measuring the expiration of more than ten years is
either the date of judgment of the prior conviction, the date of discharge from
community supervision, the date of completion of parole, or the date the
defendant completed serving a term of confinement or imprisonment for the prior
conviction.  Getts, 155 S.W.3d at
156.  The plain language of the statute
makes it clear that the date of arrest is immaterial in applying section
49.09(e)=s
remoteness restriction on the use of the prior convictions. 

Read next argues that the law in effect in 1988
precluded the State=s use of the 1988 conviction for
enhancement.  A conviction which occurred
under article 67011-1 after January 1, 1984, but prior to September 1, 1994,
may properly be used to enhance a sentence. 
See Serrato, 3 S.W.3d at 42. 
In order to exclude a prior conviction from use for jurisdictional
enhancement, three conditions must be met: (1) the prior conviction must be
final; (2) the current offense must have been committed more than ten years
after the latest date determined under section 49.09(e)(2); and (3) the
defendant must not have been convicted of any other intoxication related
offense within ten years of the latest date under section 49.09(e)(2).  See Getts, 155 S.W.3d at 156B57. 








Here, the current offense occurred on August 7,
2004.  No matter what date is considered
for Read=s 1988
conviction, the latest possible date under section 49.09(e)(2) would still be
well within ten years of his 1995 DWI conviction.  Therefore, because Read=s 1995
conviction was within ten years of Read=s 1988
conviction, the 1988 conviction failed the third condition of section 49.09(e)
and was available to enhance the current offense to felony DWI.  Similarly, no matter what date is considered
for Read=s 1995
DWI conviction, the latest possible date under section 49.09(e)(2) would still
be well within ten years of August 7, 2004, the date of the current
offense.  The 1995 conviction failed the
second condition of section 49.09(e)(2) and was available to enhance the
current offense to felony DWI.  Both the
1988 DWI conviction and the 1995 DWI conviction were available for
enhancement.  We overrule Read=s second
point.

V.  Motion
to Suppress

In his third point, Read argues that the trial
court abused its discretion in denying his motion to suppress the results of
two breath tests.  Specifically, Read
contends that the trial court erred by admitting breath test results procured
by use of the Intoxilyzer 5000 because the instrument was not reliable, the
waiting period from offense to sample was excessive, and because unauthorized
persons had access to the machine.








A. 
Standard of Review 








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
Therefore, we give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101,
108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d).  But when the trial court=s
rulings do not turn on the credibility and demeanor of the witnesses, we review
de novo a trial court=s rulings on mixed questions of
law and fact.  Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652B53.

We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.  Armendariz v. State, 123 S.W.3d 401,
404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004); Ross,
32 S.W.3d at 856; Romero, 800 S.W.2d at 543.

B. Reliability

Here, following a hearing, the first trial court
denied Read=s motion to suppress the breath
test results, and the parties agreed that rulings made in the first trial would
carry forward into the second trial. 
Read argues that absent retrograde extrapolation, the breath test
results were unreliable and therefore should have been excluded as irrelevant.

Generally, to be admissible, scientific testimony
must be sufficiently reliable and relevant, and its probative value must not be
substantially outweighed by the danger of unfair prejudice.  See Kelly v. State, 824 S.W.2d 568,
572 (Tex. Crim. App. 1992).  








To be considered reliable, evidence must satisfy
three criteria: (a) the underlying scientific theory must be valid; (b) the
technique applying the theory must be valid; and (c) the technique must have
been properly applied on the occasion in question.  See id. at 573.  The Legislature has determined that the
underlying scientific theory behind breath tests is valid, and the technique
applying the theory is also valid provided that the specimen was taken and
analyzed by individuals who are certified by, and were using methods approved
by, the rules of the department.  See Tex. Transp. Code Ann. ' 724.064
(Vernon 1999); Reynolds v. State, 204 S.W.3d 386, 390B91 (Tex.
Crim. App. 2006).  Additionally, all a
trial court need do to satisfy its Agate-keeping@
function regarding reliability is to determine whether the technique was
properly applied in accordance with department rules on the particular occasion
in question.  See Reynolds, 204
S.W.3d at 391. 

Here, Read=s breath
specimen was administered and analyzed by Officer Spohn.  Officer Spohn was certified to operate the
Intoxilyzer 5000.  Officer Spohn
testified regarding the procedures he followed in administering the test.  Mark Fondren, senior forensic chemist with
the Tarrant County Medical Examiner=s
office, testified at length regarding the maintenance of the Azle police
department=s Intoxilyzer 5000. 








Read argued that the results of a breathalyzer
test could vary according to a number of variables.  Such evidence goes to the weight to be accorded
to the results, not to their admissibility. 
See Slagle v. State, 570 S.W.2d 916, 919 (Tex. Crim. App.
1978).  The trial court was in the best
position to determine that the technique underlying the breath test was valid
and properly applied on the occasion in question.

Additionally, Read argues that the breathalyzer
results were unreliable because Aothers
had access@ to the Intoxilyzer 5000.  However, Read supplies no argument or
authority regarding how this fact invalidates his Intoxilyzer results.  By raising an issue and failing to present
any argument or authority on that issue, the party waives that issue.  See Jackson v. State, 50 S.W.3d 579,
598 n.1 (Tex. App.CFort Worth 2001, pet. ref=d); See
also Tex. R. App. P.
38.1(h).  Read has waived the right to
complain about this issue on appeal.

C.  Relevance

Read also argues that the results were irrelevant
and inadmissible without retrograde extrapolation testimony.  The lack of retrograde extrapolation evidence
does not render breath test results inadmissible.  See Stewart v. State, 129
S.W.3d 93, 96 (Tex. Crim. App. 2004). 
Read=s breath test results tended to
make it more probable that he was intoxicated at the time he drove under either
definition of intoxication because they provided evidence that Read had
consumed alcohol.  The fact that the
breath test results may not have conclusively proved that Read was intoxicated
at the time he drove is of no consequence. 









The trial court was in the best position to
determine that the probative value of the breath test results, absent
retrograde extrapolation, was not substantially outweighed by undue
prejudice.  We overrule Read=s third
point.

VI. Admissibility of Vehicle Inventory

In his fourth point, Read argues that the trial
court erred in allowing into evidence State=s
Exhibit 6.  Specifically, Read contends
that a AVehicle
Impoundment and Inventory Record@ was not
produced to the defense in a timely manner.








In Brady, the United States Supreme Court
concluded that the suppression by the prosecution of material evidence
favorable to a defendant violates due process without regard to the good or bad
faith of the prosecution.  See Brady
v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196B97
(1963).  To establish a Brady violation,
three requirements must be satisfied: (1) the state suppressed evidence, (2)
the suppressed evidence is favorable to defendant, and (3) the suppressed
evidence is material.  See Little v.
State, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999).  Favorable evidence is any evidence, that, if
disclosed and used effectively, may make a difference between conviction and
acquittal.  See Harm v. State, 183
S.W.3d 403, 408 (Tex. Crim. App. 2006). 
It is irrelevant whether suppression of the favorable evidence was done
willfully or inadvertently.  See Strickler
v. Greene, 527 U.S. 263, 263B 64, 119
S. Ct. 1936, 1939B40 (1999).  To prevail on a Brady claim where
the State=s disclosure is tardy, the
appellant must show that the late disclosure prejudiced him. See In
re A.C., 48 S.W.3d 899, 905 (Tex. App.CFort
Worth 2001, pet. denied).  To show
prejudice, the appellant must show a reasonable probability that, had the
evidence been disclosed to the defense earlier, the outcome of the proceeding
would have been different.  Id. at
905.

Here, during a break in the trial, the State
produced a AVehicle Impoundment and
Inventory Record.@ 
Among other things, the document described the condition of Read=s
vehicle on the night of his arrest.  On
the form, Officer Spohn indicated that the tires, along with all of the other
various parts of the van, were in poor condition.  Read objected, complaining that the
production of the document, which was not contained in the State=s file on
Read, was untimely.  Read contends that
it was the poor condition of his tires, not alcohol, that caused his erratic
driving, and the inventory report, had it been discovered prior to trial, would
have corroborated this.








Read has failed to show that, had the evidence
been disclosed earlier, the outcome of the proceeding would have been
different.  Read had the ability at trial
to cross-examine the officers regarding the contents of the document.  Read does not explain how he would have changed
the cross-examination if he had had more time for reflection.  The officers obtained probable cause to stop
Read after witnessing Read=s tires
cross the white line on four separate occasions.  Whether the resulting stop occurred by reason
of poor tires or alcohol is of no consequence. 
That the State belatedly produced a report that showed Read=s van
was in poor condition does not disprove Read=s
intoxication.  The evidence of the odor
of alcohol on Read=s breath and Read=s
performance on the field sobriety tests provided sufficient bases for the
officers=
conclusion of intoxication.  Based on
this record, there is no reasonable probability that the outcome of the
proceeding would have been different had the State disclosed the vehicle
inventory earlier.  We overrule Read=s fourth
point.

VII. Conclusion

Having overruled each of Read=s
points, we affirm the trial court=s
judgment.          

 

 

BOB MCCOY

JUSTICE

 

PANEL A:   CAYCE, C.J.;
LIVINGSTON and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 29, 2007

 

 








 

 

 

 

 

 

   

 











[1]See Tex. R. App. P.
47.4.   





[2] The State cites Smith
v. State for the proposition that by stipulating to the prior DWIs, Read
waived the right to complain.  We would
agree with the State had Read=s argument gone to the existence of the prior
DWIs and not to the remoteness of the prior DWIs.  See Smith v. State, 158 S.W.3d 463,
465 (Tex. Crim. App. 2005) (holding that when an appellant stipulates to the
existence of prior DWI convictions, he cannot later argue that the State
failed, at trial, to establish the existence of the prior convictions).  Therefore, Read=s complaint is not
waived.





[3] Act of May 29, 1993, 73d
Leg., R.S., ch. 900, ' 1.01, 1993 Tex. Gen.
Laws 3586, 3766.





[4] Act of May 27, 1983,
68th Leg., R.S., ch. 303, ' 3, 1983 Tex. Gen. Laws 1568, 1574B77, repealed by
Act of May 29, 1993, 73d Leg., R.S., ch. 900, ' 1.15, 1993 Tex. Gen.
Laws 3586, 3704.





[5]See Act of June 13, 2001,
77th Leg., R.S., ch. 648 ' 2, 2001 Tex. Gen. Laws
1213, 1214, repealed by Act of June 18, 2005, 79th Leg., R.S., ch. 996, ' 3, 2005 Tex. Gen. Laws
3363, 3364.