NO. 07-02-0459-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



OCTOBER 23, 2003



______________________________




NICHOLAS ANTHONY CONNOR, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE CRIMINAL JUDICIAL DISTRICT COURT OF JEFFERSON COUNTY;



NO. TRN 9062416934; HONORABLE CHARLES D. CARVER, JUDGE



_______________________________



Before QUINN and REAVIS, JJ., and BOYD, S.J. (1)

MEMORANDUM OPINION

 In this appeal, appellant challenges his conviction, after a guilty plea, of murder by
the use of a deadly weapon, and the resulting court-assessed punishment of 20 years
confinement in the Institutional Division of the Department of Criminal Justice. In doing
so, he presents two issues for our decision. Those issues are: 1) the evidence is both
legally and factually insufficient to sustain his conviction, and 2) the trial court erred in
admitting his confession "because the issue of voluntariness precludes the trial court" from
its admission. Disagreeing that reversal is required, we affirm the judgment of the trial
court.

 Because the issues are interrelated, we will discuss them together. In appeals in
which both legal and factual sufficiency questions are presented, we must first determine
if the evidence is legally sufficient to sustain the verdict. Clewis v. State, 922 S.W.2d 126,
133 (Tex. Crim. App. 1996). In determining the legal sufficiency of the evidence, we must
view it in a light most favorable to the verdict and determine whether a rational trier of fact
could have found the elements of the offense beyond a reasonable doubt. Curry v. State,
30 S.W.3d 394, 406 (Tex. Crim. App. 2000). In making that determination, we consider
all of the evidence presented, whether properly or improperly admitted, Green v. State,
893 S.W.2d 536, 640 (Tex. Crim. App.1991), and without examining the factfinder's
weighing of the evidence, determine if there is evidence supporting the verdict. Clewis,
922 S.W.2d at 132 n.10. A sustention of the legal sufficiency challenge requires a
judgment of acquittal.

 In contrast, resolution of a factual sufficiency challenge requires the reviewing court
to view all of the evidence in a neutral light, favoring neither party, Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000), and it may only set aside the verdict if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis, 922
S.W.2d at 129. Moreover, in conducting the review, the reviewing court must give
appropriate weight to the factfinder's conclusion so as not to substantially intrude upon the
factfinder's role as the sole judge of the weight and credibility given to witness testimony. 
Jones v. State, 944 S.W.2d 642, 647-48 (Tex. Crim. App. 1996), cert. denied, 522 U.S.
832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). 

 Where, as here, a defendant pleads guilty or nolo contendere, the State must
introduce sufficient evidence to support the plea and show the defendant is guilty. Tex.
Code Crim. Proc. Ann. art. 1.15 (Vernon Supp. 2003). See also Ex parte Martin, 747
S.W.2d 789 (Tex. Crim. App. 1988). The evidence may be stipulated if the defendant in
writing waives the appearance, confrontation, and cross-examination of witnesses and
consents to the introduction of documentary evidence in support of the judgment. The
waiver and consent must be approved by the trial court in writing and be filed with the
papers of the cause. Tex. Code Crim. Proc. Ann. art. 1.15.

 At the time of the hearing on his guilty plea, appellant admitted that he was entering
his plea of his own free will after consultation with his attorney, he admitted that he
understood the charge against him, the range of punishment attached to the crime and,
even understanding these matters, he still persisted in continuing with the plea. This
record is amply sufficient to show that all applicable statutory requirements in connection
with appellant's guilty plea were complied with. The evidence is both legally and factually
sufficient to sustain the judgment of the trial court in all respects. See Dinnery v. State,
592 S.W.2 343 (Tex. Crim. App. 1980); Potts v. State, 571 S.W.2d 180 (Tex. Crim. App.
1978); Sexton v. State, 476 S.W.2d 320 (Tex. Crim. App. 1972); and Soto v. State, 456
S.W.2d 389 (Tex. Crim. App. 1970). 

 Appellant's issues are overruled and the judgment of the trial court is affirmed.


 John T. Boyd

 Senior Justice


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 



ffort to determine if an adult was present. No one responded. Hill did finally locate
Jennifer asleep in the bedroom with a male companion. Upon Hill's third request for
Jennifer to rouse herself, Jennifer complied. 

 There was animal urine and feces in the apartment. One of the children was seen
walking barefoot in it. Another child had a bottle of curdled milk. There were also dirty
dishes present. So too were flies everywhere; some attempted to alight on the faces and
in the mouths of the children. One of the children was also seen to be unclean and
wearing clothes that did not match the child's size; this led Hill to believe that the youth
dressed herself. The other child wore, as previously mentioned, a soiled diaper. 
Furthermore, the children had access to a tattoo gun with needles, spray painted towels,
paints, cigarette lighters, cigarette butts, and cereal resting in a bowl on the floor, which
cereal was apparently meant for the dog. 

 Amber Gibson, the stepmother of one of Jennifer's older daughters, also confirmed
that "95 percent" of the time she went to pick up her stepdaughter there were dirty clothes
everywhere. On one occasion, when Gibson arrived to take the child, the dirty clothes
were stacked inside a closet "about four foot deep." And, when she asked Jennifer to give
her clothes for the child, Jennifer simply reached into the stack and handed her dirty items. 
 Also seen by Gibson were dishes piled in the sink for several days. Bottles of curdled milk
would be lying on the floor. Trash and toys would be strewn about. H.B. was "often dirty"
and her hair would be matted to her head. And, Gibson's stepdaughter "at times . . . would
come to [her] house with caked dirt around her mouth and in her hands and on her scalp." 
 Mary Floyd, the grandmother of another of Jennifer's older daughters (and now that
child's managing conservator) testified that Jennifer had in the past left her granddaughter
with an individual named Hugh for three days without enough food or clothing. Jennifer
would also leave the child with Floyd for extended periods of time without attempting to
contact the girl. Next, according to Floyd, Jennifer's "house was . . . beyond dirty from one
end to the other." And, often Floyd's grandchild would be dirty when she arrived to pick the
girl up. 

 When called to testify, Glenda Joan Maxwell said that Jennifer would leave all her
children on multiple occasions and for extended periods (e.g. three or four days) with
Maxwell's brother, Hugh. The latter had a mental handicap and was considered to be
"[l]ow functioning." Furthermore, Maxwell was not aware of Hugh having any type of
training to care for children. Maxwell also informed Jennifer of rumors that Hugh "had
touched her girls inappropriately." And, on one occasion the girls were found, in Hugh's
house, only in panties or towels. Because of the rumors, Jennifer was asked to stop
leaving her children with him. The request went unheeded. Jennifer continued to take the
girls to his house. Eventually, Hugh was indicted or charged with indecency with children. (3)

 Continually exposing the children to unsanitary living conditions, allowing them to
remain physically dirty, allowing them to be cared for over extended periods of time by a
"low functioning" mentally handicapped person who lacked training in the area of child
care, failing to provide for the children when left with Hugh for extended periods, and
ignoring the warnings about their exposure to potential sexual abuse constitutes ample
evidence entitling a reasonable factfinder to form a firm belief or conviction that Jennifer
knowingly placed or knowingly allowed her children to remain in conditions or surroundings
which endangered the physical or emotional well-being of H.B. and B.P. This is so despite
Jennifer's denial that she had any weaknesses in her parenting skills. Consequently, there
is both legally and factually sufficient evidence to support the trial court's finding that
§161.001(1)(D) of the Texas Family Code had been satisfied.

 Having found the evidence sufficient to support termination under §161.001(1)(D),
it is unnecessary for us to address the other statutory ground upon which termination was
based. Accordingly, we overrule Jennifer's contention and affirm the order of termination.


 Brian Quinn 

 Justice


1. The parental rights of the fathers of H.B. and B.P. were also terminated, but they did not appeal. 
2. Jennifer did not contest the finding that termination was in the best interest of the children. 
3. Jennifer denied that she was aware of any concerns that Hugh may have sexually molested children
at the times she left her offspring with him.