COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                       NOS.
2-04-301-CR 

       2-04-302-CR 

       2-04-303-CR

 

 

JAMES TABOR                                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.
Introduction








Based on two separate
indictments, a jury convicted James Tabor of aggravated sexual assault of a
child under fourteen years of age, indecency with a child by contact, and
aggravated kidnapping.  The jury assessed
his punishment at life in prison for the sexual assault offense, twenty years= imprisonment for the offense of indecency with a child by contact,
and fifty years=
imprisonment for aggravated kidnapping. 
In five points, Tabor appeals his conviction.  We affirm.

II.
Background Facts

At 7:00 a.m. on April 8,
2002, thirteen-year-old K.S. was walking from her mobile home to the school bus
stop when she was approached by a man. The man put his arm on her shoulder,
turned her around, and told her that he would cut her throat if she tried to
get away from him. 

The man then led K.S. to a
vacant mobile home.  After entering the
mobile home, the man forced K.S. to perform oral sex on him.  The man also touched her vaginal area and
spanked her buttocks.  After the assault,
the man gave K.S. a white cloth so she could clean her mouth.  The man then showed K.S. two baseball bats
and threatened to kill her if she told anyone. 
A few minutes later the man left.

Shortly after the man left,
K.S. went home and reported the attack to her mother.  K.S.=s mother called the police and reported the incident.  K.S. described her attacker as a white male
in his forties.  After reporting the
attack, K.S. was taken to Cook Children=s Hospital for an examination. 
Swabs were taken from K.S.=s mouth, breasts, and thighs. 
Those swabs were given to the Fort Worth Police Department Crime Lab
(the ACrime Lab@) and then
to the Tarrant County Medical Examiner=s Office.  








The mobile home where the
assault took place was owned by a man named Louis Seiler.  Upon being notified of the attack, Seiler
told the police that the mobile home was for rent and that he had shown it to a
white man in his late thirties or early forties the day before the attack.  Seiler cooperated with the investigation and
gave the police Tabor=s phone
number.  The police then contacted Tabor
and questioned him about the events. 
Tabor admitted that he was at the scene of the crime around the same
time the offense occurred.  He claimed
that he was there to obtain a key to the trailer from Seiler.  

Because Tabor was considered
a suspect, a buccal swab was taken from him to compare his DNA to that found
during K.S.=s
examination.  Carolyn Van Winkle, the DNA
analyst, examined the results and found that the only two DNA profiles present
in K.S.=s swabs were K.S.=s and Tabor=s.  Tabor was then charged with aggravated sexual
assault of a child under fourteen years of age, indecency with a child by
contact, and aggravated kidnapping. 

In addition to the DNA
evidence against Tabor, Tabor=s ex-girlfriend testified that while Tabor was awaiting trial he
admitted committing the offenses against K.S. 
When Tabor=s
ex-girlfriend asked Tabor why he did it, she stated that he replied, Abecause she was there.@  A jury found Tabor guilty of
each charge.  This appeal followed. 

 

 








III. Motion to Quash The Indictment 

In Tabor=s first and second issues, he contends that the trial court erred by
denying his motion to quash the indictment for aggravated kidnapping. 

In Tabor=s first issue, he argues that the trial court erred in denying his
motion to quash the indictment because it failed to allege the essential
element of Arestriction
of movement so as to substantially interfere with liberty.@  The essential elements of
aggravated kidnapping, as relevant to the instant case, are that a person: (1)
intentionally or knowingly, (2) abducts, (3) another person, (4) with the
intent to violate or abuse the person sexually. 
Phillips v. State, 597 S.W.2d 929, 932 (Tex. Crim. App. [Panel
Op.] 1980).  

ARestriction
of movement so as to substantially interfere with liberty@ is not an essential element of the offense of aggravated
kidnapping.  See Tex. Penal Code Ann. ' 20.04(a) (Vernon 2003).  That
particular phrase is found in the penal code under the definition of Arestrain.@  See id. ' 20.01(1)
(Vernon Supp. 2005).  Definitions of
terms and elements are essentially evidentiary and need not be alleged in the
indictment.  Lewis v. State, 659
S.W.2d 429, 431 (Tex. Crim. App. 1983). 
However, if a definition provides for more than one manner or means to
commit an act or omission, then, upon timely request, the State must allege the
particular manner or means on which it relies. 
Ferguson v. State, 622 S.W.2d 846, 851 (Tex. Crim. App. [Panel
Op.] 1980).








Here, the indictment alleged
that Tabor abducted K.S. by restraining her. Because Arestrain@ comprises
more than one statutorily defined means of its performance, either by moving
the person from one place to another or by confining the person, the indictment
must have specified which of the statutory definitions of the act it relied
upon.  See Coleman v. State, 643
S.W.2d 124, 126 (Tex. Crim. App. 1983). 
In both counts, the indictment alleged that Tabor restrained K.S. by Amoving K.S. from one place to another.@  Therefore, because the State
alleged all of the essential elements of the offense of aggravated kidnapping
and also alleged the particular manner or means of restraint on which it
relied, no additional pleading was necessary. 
Accordingly, we overrule Tabor=s first issue.








In Tabor=s second issue, he contends that the trial court erred by denying his
motion to quash and set-aside the indictment because the indictment failed to
allege the statutorily delineated manner of Awithout consent.@  However in Ward v. State, the Court of
Criminal Appeals held that the phrase Awithout consent@ is
surplusage to the term Arestrain@ and thus, not required to be pleaded in an indictment.  See Ward v. State, 642 S.W.2d 782, 783
(Tex. Crim. App. 1983).  The court held
further that unlike the element of restraint, there are no statutorily
alternative manners or means for Awithout consent.@  Curry v. State, 30 S.W.3d 394, 402
(Tex. Crim. App. 2000).  Restraint is not
restraint unless it is without consent and it is a given under the statute that
all restraint is without consent.  Id.  Consequently, we hold that the State was not
required to allege the manner of Awithout consent@ because the
indictment included the term Arestrain.@  Accordingly, we overrule Tabor=s second issue.

IV.
Punishment Enhancement 

In his third issue, Tabor
argues that the verdict of guilt is void because all of the factors used to
increase his punishment were not pleaded and proven beyond a reasonable
doubt.  He appears to argue that because
the indictment failed to allege the essential elements of Asubstantially interfere with liberty@ and the manner and means of Awithout consent,@ his
constitutional rights were violated.  As
we held in our discussion of the first two issues, to Asubstantially interfere with liberty@ is not an essential element of the offense of aggravated kidnapping,
and the State was not required to allege the manner of Awithout consent@ in the
indictment.  Additionally, as the State
points out, Tabor has failed to demonstrate how his punishment was increased
beyond the prescribed statutory maximum. 
Therefore, Tabor has not demonstrated that his constitutional rights
were violated.  We overrule Tabor=s third issue.  

V. Admission of Evidence

In his fourth issue, Tabor
argues that the trial court abused its discretion by refusing to admit certain
relevant evidence.  In his fifth issue,
he contends  that the trial court erred
by admitting other evidence because its probative value was substantially
outweighed by the danger of unfair prejudice. 








A. Standard of Review

We review the trial court=s decision to admit or exclude evidence under an abuse of discretion
standard.  Burden v. State, 55
S.W.3d 608, 615 (Tex. Crim. App. 2001).  Montgomery
v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1991).  The test for abuse of discretion is not
whether, in the opinion of the reviewing court, the facts present an
appropriate case for the trial court's action; rather, it is a question of
whether the court acted without reference to any guiding rules or principles,
and the mere fact that a trial court may decide a matter within its
discretionary authority differently than an appellate court does not
demonstrate such an abuse.  Montgomery,
810 S.W.2d at 391.  We will not reverse a
trial court's ruling on the admission of evidence as long as the ruling is
within the zone of reasonable disagreement. 
Id. 

B. Admission of Evidence








The Texas Rules of Evidence
provides that evidence must be relevant to be admissible.  Tex.
R. Evid. 402.  Evidence is
relevant if it has Aany tendency
to make the existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be without the
evidence.@  Tex.
R. Evid. 401.  In determining
whether evidence is relevant, courts look to the purpose for offering the evidence
and whether there is a direct or logical connection between the offered
evidence and the proposition sought to be proved.  Reed v. State, 59 S.W.3d 278, 281
(Tex. App.CFort Worth
2001, pet. ref'd).  Further, even if the
evidence is relevant, Rule 403 mandates its exclusion Aif its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence.@  Tex. R. Evid. 403; see also Jones v. State, 944
S.W.2d 642, 652 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 832
(1997).

1. Impeachment Evidence

In his fourth issue, Tabor
contends that the trial court erred in denying the admission of proper and
probative impeachment evidence concerning the mishandling of DNA evidence by
the Crime Lab in previous cases.  The
State responds that the trial court did not err because Tabor stipulated to the
chain of custody making the evidence of the Crime Lab=s handling of DNA samples in previous cases, irrelevant. 








A stipulation is a voluntary
agreement between opposing parties concerning some relevant point.  Black's
Law Dictionary 1445 (8th ed. 2004). 
As a general proposition, a stipulation is regarded as a contractual
agreement between the parties.  Howeth
v. State, 645 S.W.2d 787, 789 (Tex. Crim. App. 1983).  Further, stipulations are reasonably and
liberally construed with a view of effectuating the parties' intentions.  See O=Conner v. State, 401 S.W.2d 237, 238
(Tex. Crim. App. 1966).  Here, it was the
intent of Tabor and the State to stipulate to the chain of custody of the DNA
evidence without the necessity of proof before the jury.  The stipulation includes statements that the
examination kit was placed in a sealed envelope by the doctor who conducted the
exam of K.S. at Cook Children=s Hospital, that a Fort Worth police officer picked up the sealed
envelope from the hospital and delivered it to the Crime Lab, that an employee
of the Crime Lab checked the sealed envelope out of the Crime Lab and delivered
it to Carolyn Van Winkle at the Tarrant County Medical Examiner=s office, and that Van Winkle opened the sealed envelope for testing
purposes.  The stipulation conclusively
establishes that the envelope remained sealed from the time it left the
hospital until it was opened by Van Winkle at the Tarrant County Medical
Examiner=s office.  See Tex. R. Evid. 402.  There is no evidence that the envelope was
mishandled or tampered with while it was in storage at the Crime Lab.  The evidence shows that the Crime Lab=s only role was to provide storage for the kit.  








Therefore, although the
testimony may have been relevant to establishing that there were problems with
the Crime Lab=s handling
of evidence in other cases, here, because Tabor stipulated to a specific
description of the chain of custody that did not contain any problem at the
Crime Lab involving this piece of evidence, the trial court reasonably could
have concluded that the evidence was irrelevant to this case.  Further, the trial court reasonably could
have concluded that the evidence was inadmissible under Rule 403 because the
probative value of the evidence was substantially outweighed by the danger that
it would mislead the jury or confuse the issues.  See Tex.
R. Evid. 403; Montgomery, 810 S.W.2d at 391-93 (holding that an
appellate court should afford deference to a trial court=s Rule 403 balancing determination, reversing only where the ruling
lies outside the zone of reasonable disagreement). Accordingly, we hold that
the trial court did not abuse its discretion by excluding the proffered
testimony.  We overrule Tabor=s fourth issue.

2. Extrajudicial
Confession

In Tabor=s fifth issue, he argues that the trial court erred by overruling his
objection to testimony regarding statements he allegedly made to his
ex-girlfriend, Cathie Boydstun, in which he admitted to committing the charged
offense.[2]  He asserts that the trial court=s admission of this evidence over his objection violated Rule 403
because its probative value was substantially outweighed by the danger of
unfair prejudice.  We disagree. 








Tabor=s alleged confession to Boydstun was relevant because it linked Tabor
to the kidnapping and sexual assault of a thirteen-year-old girl, making it
more likely that he committed the offense against K.S.  See
Tex. R. Evid. 601. Thus, the trial court properly concluded that the
evidence had probative value. Further, although Tabor states that the Ahighly prejudicial nature of the testimony is obvious,@ he does not identify any unfair prejudice arising from the evidence.[3]  Instead, he merely argues that the evidence
has little probative value because Boydstun was not a credible witness.  He does not cite any cases that support his
argument.[4]  Moreover, the credibility of the evidence is
for the fact finder to determine.  See
Tex. Code Crim. Proc. Ann. art
38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim.
App. 2000).  Therefore, we hold that the
trial court did not abuse its discretion by admitting Boydstun=s testimony and we overrule Tabor=s fifth issue.

 

 








VI.
Conclusion

Having overruled all five of
Tabor=s issues, we affirm the trial court=s judgment.

 

 

BOB MCCOY

JUSTICE

 

PANEL A:   CAYCE, C.J.; HOLMAN and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  December 1, 2005











[1]See Tex. R. App. P. 47.4.





[2]Boydstun testified that, during a
jailhouse conversation with Tabor, she asked him Awhy he did what he did,@ and he responded that he did it
because Ashe was there.@ 






[3]In his brief, Tabor does not
specifically explain how the statement is prejudicial.  He only states that the Ahighly prejudicial nature of [the]
testimony is obvious.@ 





[4]Tabor cites three cases in which he
claims that the respective courts held that Adue to the lack of credibility of the inflammatory
statements and all the circumstances involved, the probative value of the testimony
was greatly reduced and substantially outweighed by the highly prejudicial and
inflammatory nature of the testimony.@  In two of the
cases, the courts held that the prejudicial effect of photographic evidence substantially
outweighed its probative value under Rule 403. 
See Salazar v. State, 90 S.W.3d 330, 336-38 (Tex. Crim. App.
2002); Reese v. State, 33 S.W.3d 238, 239 (Tex. Crim. App. 2000).  In the third case, the court held that an
expert=s statement regarding the general
behavior of rapists and rape victims was not too general to be helpful to the
jury, and that the probative value of the complained of testimony outweighed
its prejudicial effects.  See Key v. State,
765 S.W.2d 848, 851 (Tex. App.CDallas 1989, pet. ref=d).  In none of the
three cases did the appellant challenge the credibility of the witnesses
proffering the challenged evidence.  See
Salazar, 90 S.W.3d at 336-38; Reese, 33 S.W.3d at 239; Key, 765
S.W.2d at 851.