

**NUMBER 13-06-348-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

FRANCISCO SERRATA,                                                       Appellant,

v.

THE STATE OF TEXAS,                                                       Appellee.

**On appeal from the 36th District Court of San Patricio County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Benavides**

Appellant, Francisco Serrata, was found guilty by a jury of burglary of habitation. TEX. PENAL CODE ANN. § 30.02 (Vernon Supp. 2007) (second-degree felony). He pleaded "true" to two enhancement paragraphs alleging that he had been convicted on two previous occasions for burglary of a habitation. Serrata was sentenced to thirty-five years' imprisonment in the Texas Department of Criminal Justice–Institutional Division.

By two issues, Serrata contends that the evidence is legally and factually insufficient to sustain the jury's verdict of guilt. We affirm.

## I. BACKGROUND

Ruby Liserio testified that her and her common law husband, Augustine Lara, Jr., lived with her in-laws, Candida and Augustine Lara, Sr., in Mathis, San Patricio County, while their home was being fixed. They have two children. Also living in the home was her sister-in-law, F. L., who was 14 years old at the time.

Ruby's husband was an airplane mechanic, but he also played in a band led by his uncle, Joe Lara. Francisco Serrata had began singing with the band for a couple of months. The band practiced in the garage at the Laras' home.

On February 8, 2005, Ruby further testified that was not working that day. She was home when her husband came home for lunch. After lunch, she took him to work so she could keep the vehicle. She was gone for 15 minutes. When she left the home, only F.L. was home because she was sick and did not go to school. The home was left unlocked. Ruby did not leave the home again until she left to go pick up her son around 3:00 p.m. That time, she was gone for about two hours. F.L. was still the only person home at the time, but this time, locked the door because she knew she would be gone for a while.

Ruby kept her jewelry in a jewelry box in the middle closet in the room she and her husband were occupying. She went to the jewelry box that morning to put on her jewelry but decided not to wear any that day. Later that night, around midnight, she noticed that her jewelry was missing, including her wedding set, a necklace, three rings, a link bracelet, and two watches. Ruby believed that the jewelry was stolen during the 15 minute interval when she took her husband at work.

2

Ruby spoke to her mother-in-law, Felicita, and her other sister-in-law, Amy Lara. Lara testified that she had driven by her parents' house around the lunch hour while she was on her way to the doctor's office. She noticed a white Lincoln driving through the circular driveway. Serrata was driving the vehicle, and he had a passenger. She could not see the passenger, but she told the police at the time that she thought it was a male. She knew Serrata because she had seen him at her parents' home helping out with the band.

Ruby and her husband spent a month continuously calling pawn shops about the jewelry until they located her bridal set, two watches, and two rings at an EZ Pawn in Beeville, Texas. Once they found the jewelry, they called the Beeville police department. They never found the necklace, the other ring, or the link bracelet.

Dorales Salazar testified that she lives in Robstown with her four children and a granddaughter. She has known Serrata since they were children, or approximately 25 years. In February 2005, they were neighbors, and he asked her to borrow her vehicle, a 1993 white Lincoln Town Car. He said he needed to fill out paperwork for a job in Houston, so he borrowed the car in the morning and brought it back in the afternoon.

When he returned the car, he asked for another favor. He told Salazar that he needed money to get to Houston for the job, and he had some jewelry for his ex-girlfriend that he wanted to pawn. Salazar told him she could not help him because her driver's license was expired. He told her that he knew of a pawn shop that would purchase the jewelry even with an expired driver's license. Salazar testified that she agreed to the favor and that she would keep the receipt so she could take out the jewelry for him when he asked. They went to an EZ Pawn in Beeville where she pawned jewelry for hundreds of dollars. She does not remember the jewelry, other than that there were rings. She gave the money to Serrata and kept the ticket. Neither Ruby nor Amy know Salazar. They never

3

saw Serrata with a girl or girlfriend.

Steve Hutchins, an investigator with the San Patricio County Sheriff's Department, testified that he investigated the burglary at the Laras' home. On March 2, 2005, he received a call from Officer Trevino with the Bee County Police Department. Officer Trevino reported that the victim had contacted him, stating that she had located her jewelry at a pawn shop in Beeville. The jewelry had been pawned by Salazar, and a "hold" had been placed on the jewelry. Hutchins then contacted Salazar, who came into the sheriff's office and gave her statement. He also obtained the statement from Amy that she had seen Salazar's vehicle on the day in question being driven by Serrata.

Serrata testified at trial. He first stated that he had been previously convicted of two felonies: burglary of a habitation and forgery. On cross-examination, however, he revealed that he had served time for at least eight separate convictions. He stated he was on parole for his last conviction. He is also testified that he is a recovering drug addict.

Serrata stated that he has known Salazar for many years, and in February 2005, he was dating her. He was a member of the Joe Lara and "Exprecion" band, and they would practice at the Lara residence in the garage. Salazar would go with Serrata to band practice and to hang out. He denied that he ever borrowed her vehicle to go fill out paperwork for a job. He claimed he has never gone into the Laras' house other than one time to see Ruby's new baby. He stated he does not know Amy Lara. He denied burglarizing the home on February 8, 2005.

On May 25, 2006, Serrata was found guilty by a jury of burglary of a habitation. *Id.* He pleaded "true" to two enhancements for two previous convictions of burglary of a habitation. He was sentenced by the court to thirty-five years' imprisonment in the Texas

4

Department of Criminal Justice–Institutional Division.  This appeal ensued.[1]

## II. LEGAL AND FACTUAL SUFFICIENCY

Serrrata argues that the evidence was legally and factually insufficient to support his conviction.  To assess whether the evidence supporting a verdict is legally sufficient, we consider all the evidence in the record in the light most favorable to the jury verdict and determine whether a rational jury could have found the defendant guilty of all the elements of the crime beyond a reasonable doubt.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003).  "In reviewing the sufficiency of the evidence, we should look at 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'"  *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)).  While each fact may not point directly and independently to the appellant's guilt, we may affirm "as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."  *Id.*  Circumstantial evidence alone may be enough to establish guilt.  *Id.*

In contrast, three basic ground rules guide our inquiry when conducting a factual-sufficiency analysis.  *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008).  "First, the court of appeals must be cognizant of the fact that a jury has already passed on the facts and must give due deference to the determinations of the jury."  *Id.* at 705.  While

---

[1]  Serrata's trial counsel was Grant Jones, and he filed an *Anders* brief with this Court.  *See Anders v. California,* 386 U.S. 738, 744 (1967).  Serrata filed a pro se brief arguing ineffective assistance of counsel.  On April 3, 2007, this Court abated and ordered that the appointment of new appellate counsel.  On April 19, 2007, the trial court appointed David Stith.  This case was reinstated and on May 19, 2007, David Stith filed brief with this Court.

we may not agree with the jury's decision, we must "afford the appropriate deference in order to avoid substituting [our] judgment for that of the jury." *Id.* Second, if we determine that the evidence is factually insufficient, we must explain precisely why. *Id.* Third, we must "review all of the evidence in a neutral light, as opposed to a legal-sufficiency review in which the evidence is viewed in the light most favorable to the verdict." *Id.* We will reverse for factual insufficiency of the evidence if "the evidence supporting the verdict, though legally sufficient, is nonetheless too weak to support it" or if, "when considering conflicting evidence, the jury's verdict is against the great weight and preponderance of the evidence." *Id.*

### III. Analysis

Serrata argues that he did not commit the burglary, but rather, his girlfriend, Salazar, stole the jewelry and then blamed him. The jury obviously did not believe him. The testimony of Ruby, Lara, and Salazar combined is legally sufficient to support the jury's verdict.

We afford great deference to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences therefrom. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). The fact finder is the judge of the credibility of the witnesses and may believe all, some, or none of the testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

6

The jury assessed the credibility of Serrata and Salazar, rejected Serrata's testimony, and accepted Salazar's testimony. The jury also clearly accepted Lara's testimony, who saw Serrata at the home on the day in question. Given this testimony, the evidence is legally and factually sufficient to support the verdict. Serrata's two issues are overruled.

## IV. Conclusion

For the above given reasons, the judgment of the trial court is affirmed.

_____
GINA M. BENAVIDES
Justice

Do not publish.
*See* TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 29th day of August, 2008.