*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

# MEMORANDUM OPINION

Nos. 04-07-00552-CR & 04-07-00553-CR

John Eric **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2006-CR-2946 & 2006-CR-2947
Honorable Sid Harle, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Karen Angelini, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:   February 25, 2009

AFFIRMED

John Eric Garcia was charged in separate indictments with the murder of Jonathan Sanchez

and the aggravated assault of Gabriel Martinez. The causes were tried together to a jury, which found

Garcia guilty of both offenses and assessed a life sentence on the murder charge and twenty years

on the aggravated assault. Garcia appeals the murder judgment in Appeal Number 04-07-00552-CR

and the aggravated assault judgment in Appeal Number 04-07-00553-CR. Garcia argues in each case

that the indictments failed to allege venue and the evidence is legally and factually insufficient to support the judgment. We affirm both judgments.

## VENUE

Garcia first argues the judgments are void because the indictments did not allege venue and therefore failed to vest the trial court with jurisdiction to hear the matters. We disagree.

An indictment is required to "show that the place where the offense was committed is within the jurisdiction of the court in which the indictment is presented." TEX. CODE CRIM. PROC. ANN. art. 21.02(5) (Vernon 1989). Venue is pleaded sufficiently in a murder or aggravated assault case if the indictment alleges the offense was committed in the county where the prosecution is maintained. *See id.* art. 13.17 (Vernon 2005); *Nevarez v. State*, 503 S.W.2d 767, 768-69 (Tex. Crim. App. 1974).

In these cases, the first paragraph of each indictment states:

> IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS, the Grand Jury of Bexar County, State of Texas, duly organized, empanelled and sworn as such at the March term A.D., 2006, of the 399TH Judicial District Court of said County, in said Court, at said term, do present in and to said Court *that in the County and State aforesaid*, and anterior to the present of this indictment, and . . .

(emphasis added). Each indictment continues with allegations of the date and elements of the charged offense. The phrase "in the County and State aforesaid" unmistakably refers to Bexar County, Texas, where the grand jury was empanelled. The indictment the grand jury presented to the court therefore effectively alleged that: in Bexar County, Texas, anterior to presentment and on or about a certain date, Garcia committed all the elements of the offense. This was sufficient to allege venue. *See Loshe v. State*, 387 S.W.2d 389, 390 (Tex. Crim. App. 1965); *Owens v. State*, 162 Tex. Crim. 212, 283 S.W.2d 749, 754 (1955) (op. on reh'g).

## SUFFICIENCY OF THE EVIDENCE

The charges against Garcia arose out of a gang-related fight that took place on January 20, 2006, on St. James Street in San Antonio. The fight left Jonathan Sanchez dead and Gabriel Martinez with a serious gunshot wound in his thigh. Garcia argues the evidence is both legally and factually insufficient to prove he shot either man.

### *Legal Sufficiency*

We review the evidence for legal sufficiency by looking at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The State's theory was that the fight resulted from increasing tensions between Garcia and the rival gang to which Martinez and Jonathan Sanchez belonged. About two weeks before the shooting, Garcia and fellow gang member Jesse Wahl had a heated exchange with Martinez after Martinez allegedly tried to run Garcia over with a car. Both Garcia and Martinez fired shots during the confrontation and Garcia was angry about it.

The afternoon of January 20th, Wahl was with his friend Rudy Sanchez, who was upset that his common-law-wife, Peggy, had moved into a house on St. James Street. Rudy suspected Martinez and Jonathan Sanchez, who were friends of the people who lived at the St. James Street house, were having sexual relations with Peggy. Rudy had called the house numerous times that day, trying to speak to his wife. Finally, Jonathan got on the phone and exchanged inflammatory words with both Rudy and Wahl. They reported the incident to Garcia.

Garcia decided it was time to "squash a beef" and either he or an intermediary called Jonathan Sanchez to arrange a fight to settle their differences. It was agreed that Wahl and Rudy would fight Jonathan Sanchez and Martinez that night. The fight was to take place in Garcia's neighborhood and was to be with fists only. Garcia told Jonathan Sanchez to leave any guns at home.

Martinez and Jonathan Sanchez decided not to venture into the rival gang's neighborhood alone and unarmed, and instead went to the house on St. James Street. When Jonathan Sanchez and Martinez failed to show up for the fight, Garcia, his cousin, Wahl, Rudy Sanchez, Lee Ray Nuñez, and at least three others drove in two cars to the house on St. James Street. When they arrived and got out of their cars, Martinez and Jonathan Sanchez, who had been on the porch, hurried out to meet them. A few people shook hands, but several fistfights soon broke out. Martinez testified he began fighting with Garcia's cousin and then several other people jumped on Martinez and knocked him to the ground. They continued to beat and kick him while he was on the ground. At one point, Martinez looked up and saw a hand with a gun pointed at him, heard a shot, and felt his lower body go numb. Martinez testified he did not see who was holding the gun, but he saw the person turn away from him and walk to where Jonathan Sanchez was fighting. Martinez then heard another shot.

Wahl and Rudy Sanchez testified that after the fighting broke out, they and Lee Ray Nunez were fighting with Jonathan Sanchez, and Garcia and his cousin were fighting Martinez. Wahl testified he saw Garcia fall, then get up, walk to one of the cars, and then walk back to where Garcia's cousin was fighting Martinez. Wahl heard a gunshot, saw a "flame" out of the corner of his eye, and saw Martinez fall to the ground. According to Wahl, at the time he heard the first gunshot, Rudy was still fighting with Jonathan Sanchez. Rudy testified he was fighting Jonathan and

had fallen to the ground when he heard the first gunshot from the direction where Garcia and his cousin were fighting with Martinez.

Wahl and Rudy testified they ran to the cars after the first shot, leaving Nunez fighting Jonathan Sanchez. According to Wahl, when he arrived at the car, Rudy was already sitting in the driver's seat. Wahl looked back and saw Garcia walk to where Nunez was holding Jonathan Sanchez and saw Garcia shoot Sanchez. Rudy testified he was in the car when he saw Garcia walk to where Jonathan Sanchez was fighting and saw a gun in Garcia's hand. He heard a gunshot, but did not see the actual shooting. He further testified the only person he saw with a gun was Garcia. After the second shot, everyone ran back to the cars and drove away leaving Martinez and Jonathan Sanchez wounded on the ground. Sanchez died before medical help arrived.

Two of the State's witnesses, Romel Rayos and Jimmy Almendarez, testified about Garcia's later statements about the shooting. Rayos was a member of Garcia's gang, who was nevertheless very close to Jonathan Sanchez and considered Martinez a friend. Rayos went to Garcia's house after getting off work on the night of January 20th. Rayos testified Garcia appeared to be "in shock" and then he told Rayos he had shot Martinez. Garcia visited Almendarez the morning after the St. James Street shooting. Wahl and Almendarez's brother-in-law were also present. Almendarez testified Garcia talked about what happened the night before, saying he had "blasted" Martinez and Jonathan Sanchez and felt bad about it. Garcia told them all not to say anything about it or "something would happen."

Rayos and Almendarez also testified about a shooting incident that occurred in front of Garcia's house on January 14th, approximately one week before the St. James Street shooting. Rayos testified Garcia was upset that night because his younger sister was late coming home. When she

finally arrived in a vehicle driven by a male friend, Garcia went outside, gun in hand, to confront the driver about the late hour. The driver began firing at Garcia and hit Garcia's cousin in the leg. Garcia returned fire, and Rayos estimated Garcia fired seven or eight times. After the car drove off, Garcia gave Rayos the gun and told him to "stash it." Rayos identified State's Exhibit 20 as a photograph of Garcia holding a .45 caliber pistol. Rayos testified the weapon in the picture was Garcia's gun and was the gun Garcia gave him to hide after the January 14th shooting. Almendarez testified he heard "a lot" gunfire coming from the direction of Garcia's house that night and saw a car speeding away from the house. Garcia later told him the people in the car started shooting and that he shot back at the car. Almendarez testified Garcia carried a .45 caliber pistol.

The Bexar County medical examiner testified Jonathan Sanchez died from a single gunshot wound to the chest that pierced the heart and a lung. The State's firearm's examiner, Edard Love, testified the bullet recovered from Sanchez's body was .45 caliber. Based on the markings on the spent slug, Love determined it was fired from a weapon manufactured by one of three companies – Llama, Ruger, or Tanfoglio. Love identified the weapon in State's Exhibit 20 as a pistol manufactured by Tanfoglio. One shell casing was recovered at the St. James Street shooting scene, which Love identified as a .45 caliber casing.

Love also examined eight shell casings collected by police in front of Garcia's house on January 14th, and compared them to the .45 casing found on St. James Street. Love concluded all eight .45 caliber casings found at Garcia's home were fired from the same weapon. He further concluded the casing found at St. James Street was fired from the same weapon that fired the casings found at Garcia's home.

Garcia contends the evidence is legally insufficient because nobody witnessed Garcia assault Martinez and the eyewitness testimony that he shot Jonathan was unreliable. The State's witnesses testified that immediately before Martinez was shot, Garcia went to the car and then walked to where Martinez was fighting. Immediately after Martinez was shot, both Wahl and Rudy Sanchez saw Garcia, with a gun in his hand, walk to Jonathan Sanchez. Wahl saw Garcia shoot Jonathan Sanchez, and it is reasonable to conclude from Martinez's testimony that Martinez was shot by the same person who shot Jonathan. Garcia told both Rayos and Almendarez he was the shooter. Further, the State presented evidence linking the bullet that killed Jonathan Sanchez to Garcia's gun. The jury was free to believe any part of these witnesses's testimony and to draw reasonable inferences from the evidence. A rational trier of fact could have concluded from the State's evidence that Garcia murdered Jonathan Sanchez and committed aggravated assault on Martinez. Accordingly, the evidence is legally sufficient to support the judgments.

### Factual Sufficiency

In a challenge to the factual sufficiency of the evidence, we look at the evidence in a neutral light, giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We reverse only if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust or if the evidence supporting the verdict is outweighed by the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

In his challenge to the factual sufficiency of the evidence, Garcia points out multiple inconsistencies in the testimony about who initiated the fight, why they were fighting, and who rode in which vehicle to and from St. James Street. He contends Wahl's eyewitness testimony is

unreliable because Wahl admitted lying during his first interview with police and because Wahl himself had a motive for retaliating against the other gang. Garcia challenged the State's ballistic evidence with his sister's and cousin's testimony that Garcia did not have a gun or shoot a weapon during the shooting at Garcia's house on January 14.

Garcia also relies heavily on the testimony of Ronald Robinson, who lived down the block from where the St. James Street shooting occurred. Robinson, who was in prison at the time of trial, testified he saw two cars, a white one and a dark one, pull up to the house and seven or eight guys jump out and start fighting with two men at the house. He testified that all the men but one got back into the cars before the shooting started. The one who remained then shot the two victims and left in the dark car. Because the other witnesses consistently testified Garcia left the scene in the white car, Garcia contends the evidence establishes he could not have been the shooter. However, Robinson conceded he saw the events from at least four houses away, it was dark, and there were no lights. Moreover, his testimony that everyone except the shooter had returned to the cars before the shooting started is contradicted by all the participants who testified.

Finally, Garcia argues "the great weight and preponderance of the evidence pointed to Rudy" as the person who shot Martinez and Jonathan. There was substantial evidence that Rudy Sanchez was extremely upset about his wife living at the house on St. James Street. Martinez testified Rudy called the house on the day of the shooting, saying he was coming over to kill Martinez and Sanchez. A San Antonio police detective who spoke to Martinez in the ambulance just after the shooting asked Martinez if Rudy Sanchez shot him. The detective testified Martinez, who was in a great deal of pain at the time, gave what the detective interpreted as a positive response. Samuel Mendoza, who lived at the St. James Street house and spoke to Martinez immediately after the shooting, also told police

Martinez said Rudy shot him. At trial, however, Mendoza clarified that he asked Martinez what happened and Martinez responded, "Rudy and the WD something, or W – that other gang." Martinez testified he did not remember telling anyone that Rudy shot him. Martinez later picked Rudy out of a photo lineup, telling the police he recognized Rudy as a person who was present at the fight, but not as the shooter.

It was the jury's responsibility to resolve the conflicts in the evidence and weigh the credibility choices. We must afford "afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Lancon*, 253 S.W.3d at 705. Here, the jury resolved those issues in favor of the State's theory that Garcia, not Rudy Sanchez, was the shooter. Giving deference to the jury's resolution of the credibility issues, the State's evidence that Garcia shot Gabriel Martinez and Jonathan Sanchez is not greatly outweighed by evidence to the contrary. Nor was the evidence so weak that the verdict is clearly wrong and manifestly unjust.

We therefore affirm the judgments of the trial court.

Steven C. Hilbig, Justice

Do Not Publish