*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★        ★ ★ ★

**MEMORANDUM OPINION**

No. 04-08-00575-CR

John Allan **COOPER**,
Appellant

v.

**STATE** of Texas,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR06-1953
Honorable Spencer Brown, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:      Rebecca Simmons, Justice
           Steven C. Hilbig, Justice
           Marialyn Barnard, Justice

Delivered and Filed:  May 27, 2009

AFFIRMED

A jury convicted John Allan Cooper of assault and the trial court sentenced him to ninety

days in the Kerr County jail.  Cooper appeals, arguing (1) the evidence was legally and factually

insufficient to prove he caused bodily injury to the victim, and (2) the trial court erred in permitting

the State to make an improper closing argument to the jury.  We affirm the trial court's judgment.

**B**ACKGROUND

After attending a hearing in his divorce case, Cooper drove to the Hill Country Youth Ranch ("the Ranch") where his employer, Hofer Construction, was preparing for a dedication of the new high school it had built on the Ranch. Cooper approached John Meyners, a foreman for Hofer Construction, and asked to speak with him. Meyners testified Cooper was upset, but stated he was not surprised because he knew Cooper was going through a divorce and had been off work that day to attend a hearing in the matter. Cooper asked Meyners to go for a ride in the company truck that Cooper was driving; Meyners agreed. Meyners stated he could tell Cooper was upset. After Cooper started the vehicle and began to drive he asked Meyners "to give him one good reason why he shouldn't kill Dave and Scott" – Cooper's attorney and the owner of Hofer Construction who helped Cooper obtain the attorney. Meyners said he knew then that Cooper's divorce hearing had not gone well, and he asked Cooper what happened. According to Meyners, Cooper believed his employer "set him up" by urging him to hire an attorney who did not adequately represent him simply because the employer was friends with the attorney.

As they approached the main office, Cooper began to accelerate and Meyners estimated they were probably traveling fifty miles per hour on a road Meyners described as "real curvey [sic]." By the time they got to the gate, Meyners knew they were "going way too fast" and "were definitely in trouble." Meyners testified Cooper began to tell Meyners he was tired of the way Meyners had been treating him and specifically that he "was tired of all the accusations that [Meyners] was making that [Cooper] was a pedophile." On cross-examination, Cooper's attorney suggested that rather than the pedophile allegations, Cooper was upset because he learned at the divorce hearing that Meyners was

having an affair with Cooper's wife – Meyners denied the affair, denied Cooper mentioned an affair, and denied calling Meyners a pedophile.

Meyners testified he told Cooper to settle down and slow down, but Cooper replied, "We're going for a ride, Boy." Fearing Cooper intended to kill him or both of them, perhaps by ramming the truck into "the biggest tree" Cooper could find, Meyners believed he needed to get out of the truck. As they approached a turn, Meyners stated he knew Cooper would have to slow down. As Cooper slowed, Meyners testified he opened the door of the truck and stepped onto the truck's running board, but Cooper saw him and "took a hard right" at approximately sixty miles per hour through a barbed-wire fence. The fence grabbed the open truck door, pulling it toward Meyners and striking him across the back of the head. Meyners was thrown from the vehicle. Meyners denied the suggestion by Cooper that Meyners grabbed the steering wheel, causing the truck to drive through the fence.

Meyners testified the truck continued through a second fence, traveled down a small slope, and came to a stop. Meyners stated he could still hear the truck running and Cooper revving the motor, so he started trying to get up. The next thing he knew, Cooper was hitting him on the back of the shoulders and head with his fists. Meyners managed to get up and cross the road, but saw Cooper pursuing him so he climbed over a fence on the other side of the road to escape. Meyners testified Cooper was still acting aggressively, yelling and screaming. As Meyners climbed over the fence, Hofer Construction electrician Wayne Cahela arrived in his truck, stopped, and attempted to find out what happened, which ended Cooper's pursuit of Meyners.

According to Cahela, Cooper stated he and Meyners "had gotten into it . . . over some dispute." Cooper told Cahela he was upset because he "lost his court case . . . Meyners was sleeping

with his wife . . . [a]nd . . . called him a pedophile." Cahela testified Cooper admitted assaulting Meyners, stating he "had just beat up John Meyners." Cahela stated he saw Meyners and that he had blood "coming from his head. And he was just real shook up."

Soon after Cahela arrived, Kerr County Deputy Sheriff Kevin Ancelet arrived. Deputy Ancelet had been "doing stationary radar" near the Ranch when a motorist advised there was a fight going on near the entrance to the Ranch. Deputy Ancelet testified he spoke with everyone at the scene and, pursuant to Kerr County policy, prepared and submitted a report to the Criminal Investigations Division for a determination of whether an arrest should be made at a later time. He stated Cooper and Meyners gave conflicting accounts regarding how the truck actually ended up going through the fence – Cooper said Meyners grabbed the wheel, but Meyners stated Cooper turned the wheel sharply to the right when he attempted to get out of the truck. Deputy Ancelet testified that both Cooper and Meyners agreed Meyners was trying to get out of the truck and Cooper "jumped on" Meyners after he was out of the vehicle. Meyners testified he had a "pretty good cut to the back of [his] head" . . . [a]nd . . . [his] ribs were bruised up pretty bad" as a result of the confrontation with Cooper. Though an ambulance came to the scene, Meyners had a friend take him to the hospital where he received eight staples to close the cut on his head and underwent a CAT scan. He testified he did not feel any additional pain or suffer additional injuries when Cooper struck him with his fists, but he clarified that it was only because his head was already "hurting pretty good" and he could not tell if Cooper's blows were causing additional pain. Meyners's injuries were corroborated by the testimony of Cahela and Deputy Ancelet. Deputy Ancelet also noted cuts and blood on Cooper's hands.

**ANALYSIS**

*Sufficiency of the Evidence*

We review the evidence for legal sufficiency by looking at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). In a factual sufficiency review, we view the evidence in a neutral light and ask whether the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). We cannot find the evidence factually insufficient merely because there are "reasonably equal competing theories of causation." *Steadman v. State*, No. PD-1311-08, 2009 WL 838550, at *4 (Tex. Crim. App. Apr. 1, 2009) (quoting *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001)).

To prove assault, the State must show the defendant intentionally, knowingly, or recklessly caused serious bodily injury to another person. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2008). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *Id*. § 1.07(c)(8). Cooper argues the evidence in this case was legally and factually insufficient to prove he caused Meyners's injuries. He contends the injuries were "self-inflicted" when Meyners decided to get out of the moving vehicle. Cooper claims there was insufficient evidence "as to what caused the vehicle to run through a fence," noting that "[v]ehicle accidents occur frequently on and off of the highway." We disagree with Cooper's interpretation of the evidence.

Meyners's testimony about Cooper's statements, demeanor, and erratic driving show Meyners believed Cooper was going to kill him, which made Meyners feel he had to escape from the truck before Cooper could carry out any such plan. The evidence showed that when Meyners opened the door and stepped onto the running board in an effort to get out of the truck, Cooper turned the steering wheel hard to the right causing the truck, which was traveling at approximately sixty miles an hour, to careen through a barbed-wire fence. Based on Meyners's testimony, Cooper's action in jerking the steering wheel hard to the right caused the truck to run through the fence, which in turn caused the door to hit Meyners in the head and body, resulting in injuries to his head and ribs. After Meyners got out of the truck, Cooper, by his own admissions to Cahela and Deputy Ancelet as well as Meyners's testimony, aggressively pursued Meyners and assaulted him. Meyners testified he did not feel any additional pain because of the injuries he had already suffered. The jury was instructed to find Cooper guilty if the evidence proved beyond a reasonable doubt that Cooper intentionally, knowingly, or recklessly caused bodily injury to Meyners. Meyners's testimony supports the jury's finding. The jury certainly could have determined that Meyners's injuries were caused by Cooper's intentional or reckless actions in driving through the fence or striking Meyners with his hands.

Cooper cites *McDuffey v. State* for the proposition that an assault does not occur when a person voluntarily leaps from a moving vehicle, even if the person believes a crash will occur. 151 Tex. Crim 203, 206 S.W.2d 601 (1947). *McDuffey* does not stand for the proposition for which Cooper cites it. Rather, the court in *McDuffey* held the indictment, which alleged aggravated assault with a motor vehicle, failed to charge a violation of the law because the statute defining the offense

required the vehicle to strike or collide with the injured party or the vehicle in which he was riding, but the victim in the case was injured when he leapt from a vehicle. *Id*. at 204-05.

The evidence in this case is sufficient, legally and factually, to support the jury's finding that Cooper caused Meyners's injuries. We overrule issues one and two.

### *Jury Argument*

The State argued that if Meyners had not decided to get out of the truck, the events might have ended in a "murder/suicide." In his third issue, Cooper contends this was an improper jury argument designed to inflame and prejudice the jury, and the trial court erred in allowing the jury to hear and consider it.

We hold the argument was not improper. Proper jury argument falls into four general areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). Meyners testified he knew Cooper "was intent on probably killing me, **or killing both of us**." (emphasis added) The prosecutor's argument that it was fortunate the incident did not result in a "murder/suicide" was a summation of or deduction from the evidence, and therefore was proper argument. We overrule Cooper's third issue.

### CONCLUSION

Having overruled Cooper's complaints, we affirm the trial court's judgment.

Steven C. Hilbig, Justice

Do Not Publish