**Opinion filed August 28, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00282-CR

_____

## JUAN L. BEJARANO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-38,013**

## M E M O R A N D U M   O P I N I O N

The jury convicted Juan L. Bejarano of three separate offenses: (1) the murder of Gerardo Bustamante; (2) the aggravated assault with a deadly weapon of Pedro M. Morales; and (3) the unlawful possession of a firearm by a felon. The jury assessed Appellant's punishment at confinement for life and a $10,000 fine for each of the three convictions. The trial court sentenced Appellant accordingly and

ordered that the three sentences were to run concurrently. Appellant raises three issues for review. We affirm.

On the date of the offenses, Appellant went to visit his brother, Gabino Bejarano, at Gabino's home in Ector County. The two had several drinks at Gabino's house and at a nearby restaurant. At some point, Appellant decided to visit Gerardo "Lalo" Bustamante. Appellant and Gabino walked to the trailer where Bustamante lived and called or whistled for him to come outside. Bustamante came outside and spoke with Gabino for a short time. Gabino testified that Appellant asked Bustamante if he wanted "to go drink some beers" and that, suddenly, Gabino heard a "pop." Gabino saw Bustamante fall over and saw someone, who turned out to be Morales, come out of the trailer. Gabino heard another shot and asked Appellant what he was doing. The second shot missed, but frightened, Morales. Gabino left the scene. Morales went to Bustamante to check on him. He testified that he knew Bustamante was outside and that he believed the individuals were in an argument because of the look on their faces. Morales testified that he had poor eyesight and hearing but that he knew the man in the hat and jacket had fired the shots. However, he could not positively identify a face. When Appellant "finally caught up to" Gabino after Gabino had left the scene, Appellant admitted that he had shot Bustamante.

Michael Head, who owned a trailer near Bustamante's trailer, ran to Bustamante's trailer when he heard shots. Head saw Bustamante on the ground and saw two individuals—that turned out to be Appellant and Gabino—but he could not see their faces as they walked away. Head called 911 and provided descriptions of the two individuals whom he saw leave the scene. Officer Omero Carrasco, of the City of Odessa Police Department, testified that he had received information that he should be on the lookout for two men, one wearing a blue and white jersey and the other wearing a black shirt with brown sleeves and a hat. Shortly thereafter,

2

Officer Carrasco saw Appellant and Gabino as they were walking down the street; they matched the descriptions that he had been given, and he stopped them.

When he stopped Appellant and Gabino, Officer Carrasco ordered them to get on the ground. Gabino quickly complied, but Appellant hesitated, removed a firearm from his waistband, and slowly complied. He placed the firearm away from his body and outside Gabino's reach. Another Odessa police officer, Caleb Lacey, arrived and confirmed that the firearm was on the ground near Appellant. It was not within reach of Gabino. When the police searched Appellant, they found a plastic case containing .22 caliber bullets in Appellant's back pocket. The firearm recovered was a .22 caliber weapon. The police took Appellant and Gabino into custody. After officers interviewed Gabino, he was released.

Kevin Richard Callahan, with the Texas Department of Public Safety Crime Laboratory, analyzed the following items: (1) the firearm recovered from Appellant; (2) the empty cartridge cases found in the firearm; (3) a lead bullet removed from the support beam in Bustamante's trailer; and (4) small metal fragments. Callahan confirmed that the four empty cartridge cases were fired from the firearm recovered from Appellant. However, he could not positively link any of the other items he analyzed to this firearm because the marks on the items were unclear.

In Appellant's three issues, he claims that the evidence was insufficient to convict him of any of the three offenses. Appellant argues that no rational jury would believe the two witnesses who were at the scene at the time of the offenses because one had inconsistencies in his statements to police officers and a criminal history, and the other had poor eyesight and hearing. Appellant further argues that, because the DPS laboratory did not test the gun for DNA or fingerprints, the gun could not be linked to him. Finally, he argues that there is insufficient evidence that the fragments were fired from the firearm recovered at the scene of his arrest because the fragments found at the scene of the offenses could not be connected to the gun

3

recovered. Thus, he requests this court to enter a judgment of acquittal or to reverse and remand for a new trial.

The State must prove each element of the three offenses beyond a reasonable doubt. *See, e.g.*, *Calton v. State*, 176 S.W.3d 231, 233 (Tex. Crim. App. 2005). As charged in this case, a person commits murder when he "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (West 2011). A person commits aggravated assault as charged in this case when he "intentionally or knowingly threatens another with imminent bodily injury" and "uses or exhibits a deadly weapon during the commission of the offense." *Id.* § 22.01(a)(2) (West Supp. 2014). Finally, "[a] person who has been convicted of a felony commits an offense if he possesses a firearm . . . after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony." *Id.* § 46.04(a)(1).

We review the sufficiency of the evidence, whether denominated as a legal or a factual sufficiency claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In our review, we will give deference to the duty of the factfinder to resolve credibility issues and to weigh the evidence. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

4

First, we will address Appellant's third issue in which he challenges the sufficiency of the evidence in support of his conviction for unlawful possession of a firearm by a felon. Appellant stipulated to a prior felony offense; therefore, for the third offense the only question was whether he possessed a firearm. Appellant argues that, because the DPS laboratory did not analyze the gun for fingerprints or DNA, there was insufficient evidence to link the gun to Appellant. However, Officer Carrasco's testimony placed the gun in Appellant's possession approximately 0.25 miles from Bustamante's trailer. Further, as the laboratory analyst testified, these tests were unnecessary since the officer saw Appellant handle the gun. Any tests would be duplicative of the officer's testimony. We hold that a rational jury could have found beyond a reasonable doubt that Appellant possessed the firearm. *See id.*; *see also Jackson*, 443 U.S. at 319. Appellant's third issue is overruled.

Because Appellant's first two issues are intertwined, we will address them together. Appellant argues that there was insufficient evidence to show that he used a firearm to commit the offenses. Appellant bases this argument on Callahan's inability to prove that the fragments or bullet he analyzed came from the recovered gun. However, the bullet found in the support beam of the trailer and the gun recovered from Appellant were both .22 caliber. One fragment was recovered from Bustamante's head during his autopsy. Further, Detective Michael Liverett, of the Odessa Police Department, testified that the trajectory of the bullet found in the support beam of the trailer was consistent with the shot fired at or near Morales. Further, Appellant told Gabino that he had fired the shots. The jury was free to make reasonable inferences from the facts presented. *Hooper*, 214 S.W.3d at 13.

Appellant also argues that Gabino lacked credibility because there were several inconsistencies in his statements to the police throughout the investigation. Specifically, Appellant argues that the jury could not have found Gabino credible

because he told Detective W.J. (Tom) Carlisle, of the Odessa Police Department, in his first interview that Bustamante came out of the trailer because Gabino whistled for him and in the second interview Gabino said that he called out for Bustamante. Also, in Gabino's first interview he did not mention Morales. Detective Carlisle also testified that Gabino told him different stories about his plans to get Appellant to town prior to the offense. Finally, Appellant argues that Gabino testified inconsistently about what Appellant said after he shot at Bustamante and Morales. However, as Detective Carlisle testified, these inconsistencies did not affect his investigation. This court must resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Further, Appellant argues that no rational jury could have found Gabino's or Morales's testimony to be credible because Gabino had a criminal history and Morales had poor eyesight and hearing. However, the jury was free to give as little or as much weight as it desired to Gabino's and Morales's testimony. *See, e.g.*, *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) ("With respect to testimony of witnesses, the jury is the sole judge of the credibility and weight to be attached thereto . . . ."). Even if we disagreed, we cannot substitute our own judgment for that of the jury. *See Johnson v. State*, 23 S.W.3d 1, 11–12 (Tex. Crim. App. 2000).

Moreover, the State presented evidence in addition to that provided by Gabino and Morales. First, Head's testimony placed Appellant at the scene of Bustamante's murder and Morales's assault. Second, not long after Bustamante was shot, Officer Carrasco stopped Appellant and watched him take a firearm out of his waistband and set it on the ground. Officer Carrasco testified that Appellant placed the firearm where Gabino could not reach it. Officer Lacey arrived at the place where Officer Carrasco apprehended Appellant and confirmed that the firearm was not in Gabino's reach. The firearm was a .22 caliber, and the bullet found in the

trailer near where Morales was standing was a .22 caliber.  We hold that, from the evidence presented, a rational jury could have found Appellant guilty of all three offenses.  Appellant's first and second issues are overruled.

We affirm the judgments of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


August 28, 2015

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.